RIGBY et al., Appellants,

v.

FALLSWAY EQUIPMENT COMPANY, INC. et al., Appellees.

[Cite as *Rigby v. Fallsway Equip. Co., Inc.,* 150 Ohio App.3d 155, 2002-Ohio-6120.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20985.

Decided Nov. 13, 2002.

John C. Weisensell, for appellants Stewart James Rigby and Catherine Rigby.

William T. Whitaker and Mary Margaret Rowlands, for appellants.

Christopher A. Tipping and Stewart D. Roll, for appellees.

BATCHELDER, Judge.

{¶ 1} Appellants, Stewart and Catherine Rigby, appeal from the judgment of the Summit County Court of Common Pleas. We affirm in part, reverse in part, and remand.

{¶ 2} On April 18, 2000, the Rigbys filed a complaint against Fallsway Equipment Company, Inc. ("Fallsway"), Rite Hite Corporation, and Atlantic Food Distributors.[1] In their complaint against Fallsway, the Rigbys alleged breach of contract, promissory estoppel, tortious interference with a contract, intentional infliction of emotional distress, and loss of consortium.

{¶ 3} Mr. Rigby was employed by Fallsway from 1996 to 1998. On April 20, 1998, while performing work for Fallsway, a dock leveler collapsed and caused severe injuries to Mr. Rigby's head. Fallsway continued to pay Mr. Rigby pursuant to its wage-continuation policy, which provided that Fallsway would supply payment of wages in lieu of workers' compensation benefits for a period of up to six months.

{¶ 4} Mr. Rigby was authorized to return to work for light duty by Dr. Nelson on August 12, 1998, by Dr. Shah on August 14, 1998, and by Dr. Magoon on August 24, 1998. Light duties involved four hours per day, three days a week, performing desk-type work.

{¶ 5} On August 5, 1998, and August 21, 1998, Fallsway sent Mr. Rigby letters requesting that he return to work and that his continuing wages would

---

1. The Rigbys' claims against Rite Hite Corporation and Atlantic Food Distributors have been settled and dismissed.

terminate as of August 21, 1998. Mr. Rigby did not return to work. Mr. Rigby's attorney contacted Fallsway by letter and informed Fallsway that the wage-continuation program would terminate effective September 1, 1998, due to Fallsway's breach of the agreement and policy. Thereafter, Fallsway placed Mr. Rigby on medical leave. According to Fallsway's employee handbook, Fallsway employees are entitled to twelve weeks of medical leave. The employee handbook states that if the employee does not return to work at the end of the medical leave, Fallsway will assume that the employee has resigned. At the end of the twelve weeks, Mr. Rigby did not return to work. Fallsway terminated Mr. Rigby's employment on December 1, 1998, and this suit followed. Fallsway moved for summary judgment, and the trial court granted Fallsway's motion on all claims. It is from this judgment that the Rigbys now appeal. We will address each assignment of error in turn.

### First Assignment of Error

{¶ 6} "The trial court erred in holding that Fallsway's employee handbook did not alter Mr. Rigby's 'employment at will' status, as there are material issues for the trier of fact to decide."

{¶ 7} In their first assignment of error, the Rigbys assert that the trial court erred in holding that Fallsway's employee handbook did not alter Mr. Rigby's employment-at-will status with regard to their breach-of-contract claim. We disagree.

{¶ 8} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272. "[Appellate courts] review the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." *Am. Energy Serv. v. Lekan* (1992), 75 Ohio App.3d 205, 208, 598 N.E.2d 1315. Pursuant to Civ.R. 56(C), summary judgment is proper if:

{¶ 9} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 10} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75

Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 11} In order for a party to prevail on summary judgment, he must show that no genuine issue of material fact exists. If the moving party fails to produce evidence on an issue of material fact, then summary judgment must be denied, regardless of whether the nonmoving party has produced evidence on the issue. See *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201–202, 24 OBR 426, 494 N.E.2d 1101.

{¶ 12} A court may grant summary judgment only if the moving party is entitled to judgment as a matter of law. "There is no 'default' summary judgment under Ohio law." *Maust v. Palmer* (1994), 94 Ohio App.3d 764, 769, 641 N.E.2d 818. Even if no memorandum in opposition to a motion for summary judgment is filed, the moving party must still meet its burden under *Dresher.* See *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904.

{¶ 13} An employment contract that does not specify a specific term of employment is "terminable at will by either party." *Henkel v. Educational Research Council of Am.* (1976), 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118, syllabus. There are two exceptions to the employment-at-will doctrine where the employer's right to terminate the employee is limited: (1) employee handbooks, company policy, and oral representations may create implied or express contractual provisions that alter the at-will contract, and (2) representations or promises made to the employee that fall within the doctrine of promissory estoppel. *Doe v. Lodi Community Hosp.* (Dec. 13, 2000), 9th Dist. No. 2955–M, 2000 WL 1825095, citing *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103–104, 19 OBR 261, 483 N.E.2d 150.

{¶ 14} "Generally, employee handbooks do not constitute an employment contract." *Ridgill v. Little Forest Med. Ctr.* (June 28, 2000), 9th Dist. Nos. 19501 and 19530, 2000 WL 840494; see, also, *Finsterwald–Maiden v. AAA S. Cent. Ohio* (1996), 115 Ohio App.3d 442, 446, 685 N.E.2d 786. An employee handbook may be considered with regard to the question of whether an implied contract exists, but its presence alone is not dispositive. See, *Ridgill,* supra. Even though the employee handbook may be considered, " '[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at

will precludes an employment contract other than at will based upon the terms of the employee handbook.' " *Westenbarger v. St. Thomas Med. Ctr.* (June 29, 1994), 9th Dist. No. 16119, 1994 WL 286022, quoting *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus.

{¶ 15} In their complaint, the Rigbys alleged that Fallsway's employee handbook alters the employment-at-will status of employees who were injured in the course of their employment. The Rigbys pointed to the portion of the handbook that states that "[e]mployees who sustain work-related injuries are eligible for a medical leave of absence for the period of disability in accordance with all applicable laws covering occupational disabilities."

{¶ 16} In its motion for summary judgment, Fallsway attached a copy of its employee handbook, which contains the following provision entitled "Nature of Employment":

{¶ 17} "Employment with Fallsway is voluntarily entered into, and the employee is free to resign at will at any time, with or without cause. Similarly, Fallsway may terminate the employment relationship at will at any time, with or without notice or cause, so long as there is no violation of applicable federal or state law.

{¶ 18} "Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between Fallsway and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, may be amended or cancelled at any time, at Fallsway's sole discretion."

{¶ 19} Fallsway also attached the "Employee Acknowledgement Form," signed by Mr. Rigby, which states, "I acknowledge that this handbook is neither a contract of employment nor a legal document."

{¶ 20} In response to Fallsway's motion for summary judgment, the Rigbys asserted that the language in the employee handbook shows that Fallsway intended to treat employees injured on the job differently from employees who sought medical leave for other reasons. In support of this assertion, the Rigbys pointed to the deposition of Jackie Maynard, controller for Fallsway.[2] In her deposition, the Rigbys asserted that Maynard distinguishes the disability provision in the employee handbook from the work-related injury provision. The Rigbys also attached the deposition of Scott Rainey, executive vice president of

---

2. As controller, Maynard oversaw the finance department, the data processing department, and human resources.

Fallsway. In his deposition, he stated that the work-related injury provision references the prior medical-leave provisions. The Rigbys argue that the difference between the two provisions, and the discrepancy between Fallsway's own employees, is evidence of a genuine issue of material fact. We do not agree. The disclaimer language in the employee handbook, taken together with the acknowledgment form, precludes an employment contract other than at will based upon the terms of the employee handbook. See *Westenbarger,* supra.

{¶ 21} After review of all the evidence presented, this court finds that summary judgment on this claim was proper. There is no genuine issue of material fact regarding a breach of contract, Fallsway was entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion—that Fallsway did not breach the contract. The Rigbys' first assignment of error is overruled.

### Second Assignment of Error

{¶ 22} "The trial court erred in finding that plaintiff failed to make out a *prima facie* case for promissory estoppel by finding there to be 'no evidence' establishing that Fallsway promised plaintiff job security for the period of his disability."

{¶ 23} In the second assignment of error, the Rigbys assert that the trial court erred in granting Fallsway's motion for summary judgment on their claim of promissory estoppel. We disagree.

{¶ 24} As pertinent to this assignment of error, the standard of review for summary judgment has been discussed in the first assignment of error.

{¶ 25} As stated in the first assignment of error, there are two exceptions to the employment-at-will doctrine. The Rigbys' second assignment of error deals with the second exception: promissory estoppel. The elements of promissory estoppel include "a promise, clear and unambiguous in its terms; reliance by the party to whom the promise is made; that the reliance was reasonable and foreseeable; and that the party claiming estoppel was injured by the reliance." *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035. The claimant must demonstrate detrimental reliance on specific promises of job security to create an exception to the employment-at-will doctrine. *Wing,* 59 Ohio St.3d at 110, 570 N.E.2d 1095.

{¶ 26} In their complaint, the Rigbys used the same language in the employee handbook to support their promissory estoppel claim as they used to support their breach of contract claim. The employee handbook states that "[e]mployees who sustain work-related injuries are eligible for a medical leave of absence for the period of disability in accordance with all applicable laws covering occupation-

al disabilities." The Rigbys alleged that this language contains a promise in clear and unambiguous terms and they foreseeably relied on this promise to their detriment.

{¶ 27} In support of its motion for summary judgment, Fallsway asserted that the language of the employee handbook does not contain a specific promise of employment but instead pertains to medical leaves. In addition, Fallsway again referred to the disclaimer language in the employee handbook. Fallsway asserted that Mr. Rigby could not reasonably and foreseeably rely on the employee handbook to alter the at-will employment when the employee handbook specifically states in the disclaimer language that the "[p]olicies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between Fallsway and any of its employees."

{¶ 28} In response to Fallsway's motion for summary judgment, the Rigbys cited the language in the employee handbook noted in the first assignment of error and attached the deposition of Mr. Rigby. In his deposition, Mr. Rigby stated that the vice president of Fallsway told him that he would be paid for "wage continuation."

{¶ 29} Based on this evidence, there is no genuine issue of material fact as to whether Fallsway made a specific promise to Mr. Rigby that would alter his at-will employment. Neither the language in the employee handbook nor the vice president's statement constitutes a specific promise of employment. Further, there is no genuine issue of material fact regarding whether the disclaimer language in the employee handbook would induce a reasonable person to act or refrain from acting.

{¶ 30} After review of all the evidence presented, this court finds that summary judgment on this claim was proper. There is no genuine issue of material fact regarding promissory estoppel, Fallsway was entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion—that the employee handbook did not give rise to a promissory estoppel exception to the employment-at-will doctrine. The Rigbys' second assignment of error is overruled.

## Third Assignment of Error

{¶ 31} "The trial court erred by improperly weighing the evidence in holding that appellant failed to satisfy the *prima facie* elements of tortious interference with contract."

{¶ 32} In their third assignment of error, the Rigbys assert that the trial court erred in granting Fallsway's motion for summary judgment on their claim of tortious interference with a contract. We disagree.

{¶ 33} As pertinent to this assignment of error, the standard of review for summary judgment has been discussed in the first assignment of error.

{¶ 34} The elements of tortious interference with a contract are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, paragraph one of the syllabus.

{¶ 35} In their complaint, the Rigbys alleged that Fallsway intentionally procured the breach of the contracts between Mr. Rigby and his medical care providers by repeatedly harassing the medical-care providers.

{¶ 36} The parties do not dispute that a contract existed between Mr. Rigby and his medical-care providers and that Fallsway knew of this contract. However, Fallsway asserted that it did not intentionally procure the breach of any contract. In support of its motion for summary judgment, Fallsway attached several affidavits from Mr. Rigby's treating physicians. Dr. Michael Knight, Dr. John Riester, Dr. David Nelson, and Dr. Elbert Magoon all signed affidavits containing the following language:

{¶ 37} "At no time has any person associated with Fallsway Equipment Company, Inc. communicated with me in a way that: (a) caused me or my office to deny or change in any way care that was or would have been provided to Stewart Rigby or how Stewart Rigby was treated by me or my office; or (b) I considered to be harassing."

{¶ 38} Employees for Dr. Riester and Dr. Magoon signed similar affidavits. Fallsway also attached the deposition of Dr. Shah, in which he stated that neither he nor his office staff felt harassed by contacts from Fallsway. In addition, Dr. Shah stated that he did not inform Mr. Rigby that he would no longer treat him as a patient, but rather, it was Mr. Rigby who decided to stop receiving treatment from Dr. Shah.

{¶ 39} In response to Fallsway's motion, the Rigbys presented evidence that Fallsway did contact Mr. Rigby's medical-care providers to determine when Mr. Rigby could return to work. The Rigbys also attached the depositions of Mr. and Mrs. Rigby. Mr. Rigby stated in his deposition that Dr. Shah told him that the reason Dr. Shah stopped treating Mr. Rigby was "[b]ecause of numerous contacts with Fallsway. Because of harassing contacts with Fallsway. Because of disruption to his office from Fallsway." Mrs. Rigby's deposition stated that Mr. Rigby told her what Dr. Shah had allegedly told him regarding Fallsway's contacts with his office.

{¶ 40} As stated in the first assignment of error, once the moving party has met its burden of demonstrating an absence of a genuine issue of material fact on

an essential element of the nonmoving party's claim, to avoid summary judgment, the nonmoving party must then demonstrate a genuine issue of material fact. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264. In this case, Fallsway met its burden of demonstrating the absence of a genuine issue of material fact with regard to the third element of tortious interference with a contract. The burden then shifted to the Rigbys to demonstrate a genuine issue of material fact.

{¶ 41} "Only facts which would be admissible in evidence can be stated in affidavits and relied upon by the trial court when ruling upon a motion for summary judgment." *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 631, 605 N.E.2d 936, fn. 4. An affidavit based on hearsay is not proper evidence of a genuine issue of material fact pursuant to Civ.R. 56(E). *Stewart v. Sterling Foundry Co.* (Apr. 12, 1989), 9th Dist. Nos. 88CA004426 and 88CA004428, 1989 WL 35083. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C).

{¶ 42} Mr. Rigby's deposition repeats statements made by Dr. Shah that are offered for the truth of the matter asserted. Mrs. Rigby's deposition offers statements made by Mr. Rigby concerning statements made by Dr. Shah. These statements are hearsay and cannot be considered as evidence demonstrating a genuine issue of material fact. The Rigbys have not presented evidence to show a genuine issue of material fact with regard to the third element of their claim of tortious interference with a contract. Because there are no genuine issues of material fact regarding the third element of tortious interference with a contract, we need not consider the remaining elements. The trial court did not improperly weigh the evidence.

{¶ 43} After review of all the evidence presented, this court finds that summary judgment on this claim was proper. There is no genuine issue of material fact regarding the Rigbys' claim of tortious interference with a contract, Fallsway was entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion—that Fallsway did not tortiously interfere with Mr. Rigby's contract with his medical-care providers. The Rigbys' third assignment of error is overruled.

### Fourth Assignment of Error

{¶ 44} "The trial court erred in finding that appellants are unable to set forth a *prima facie* case of intentional infliction of emotional distress."

{¶ 45} In their fourth assignment of error, the Rigbys assert that the trial court erred in granting Fallsway's motion for summary judgment on their claim of intentional infliction of emotional distress. We agree.

{¶ 46}  As pertinent to this assignment of error, the standard of review for summary judgment has been discussed in the first assignment of error.

{¶ 47}  To support a claim for intentional infliction of emotional distress, the plaintiff must prove the following elements:

{¶ 48}  "(1) [T]he defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community, (3) the defendant's actions proximately caused psychic injury to the plaintiff, and (4) the plaintiff suffered serious mental anguish of the nature no reasonable man could be expected to endure." *Jones v. White* (Oct. 15, 1997), 9th Dist. No. 18109, 1997 WL 669737, citing *Burkes v. Stidham* (1995), 107 Ohio App.3d 363, 375, 668 N.E.2d 982.

{¶ 49}  The Ohio Supreme Court has defined the standard for "extreme and outrageous" conduct:

{¶ 50}  " 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 453 N.E.2d 666, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d*.

{¶ 51}  " 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' "  The injury must be of such a magnitude that a reasonable person would be unable to cope with the mental distress created by the circumstances of the case.  See *Jones*, supra.

{¶ 52}  In their complaint, the Rigbys asserted that Fallsway either intended to cause, or should have known that its actions would cause, serious emotional distress to the Rigbys.  The Rigbys also asserted that Fallsway's conduct was extreme and outrageous and was the direct cause of emotional injury.

{¶ 53}   In their motion for summary judgment, Fallsway asserted that considering the sworn testimony in this case, the actions alleged by the Rigbys do not constitute intentional infliction of emotional distress.

{¶ 54}   In response to Fallsway's motion, the Rigbys asserted that there are genuine issues of material fact regarding the number of calls they received from Fallsway employee, Maynard, and the substance of those calls.   In Rigby's deposition, he stated that Maynard contacted him during the first week of May 1998, the month following the accident, and stated, "I expect you to be at work at 0700 hours Monday morning, your regular starting time."   The Rigbys also presented deposition testimony that Maynard, Scott Rainey, Fallsway's executive vice president, and Tom McGuire, Rigby's supervisor, all agreed that if Maynard had made the previous statement to Rigby, at that time, that it would be "outrageous."

{¶ 55}   In addition, the Rigbys presented Mrs. Rigby's deposition in which she stated that Mr. Rigby "got very emotional, very upset, agitated over [Maynard's] numerous phone calls, [Maynard's] lack of understanding."   In their response, the Rigbys asserted that Mrs. Rigby's deposition states that Mr. Rigby was on medications to help him sleep and for blood pressure.   Upon review of Mrs. Rigby's deposition, however, Mrs. Rigby stated that she (not her husband) needed medication to sleep and lower her blood pressure.

{¶ 56}   The Rigbys also attached the deposition of Bonnie Hamant, a nurse employed by Anthem Managed Company who worked as Mr. Rigby's case manager for his worker's compensation claim.   In her deposition, Hamant stated that Maynard's behavior was "detrimental to his psychological well-being.   It definitely caused him major anxiety.   It caused a lot of emotional turmoil[.]" Hamant further stated that she believed that Maynard's conduct resulted in physical injuries to Mr. Rigby.

{¶ 57}   As stated previously, the party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.   The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. In this case, Fallsway has not pointed to any evidence to support its motion for summary judgment, but has merely stated:

{¶ 58}   "Considering the sworn testimony herein, the actions alleged by Plaintiff do not constitute intentional infliction of emotional distress.   The actions alleged by Plaintiff against Fallsway, not only have been refuted by Plaintiff's medical providers, but also (whether refuted or even unrefuted), do not rise to the

level or constitute 'extreme or outrageous conduct' as defined by the Ohio Supreme Court."

{¶ 59}  The broad statement "considering the sworn testimony herein" does not qualify as pointing to Civ.R. 56(C) evidence, and is not sufficient to support a motion for summary judgment.  See, generally, *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264; see, also, *Cechowski v. Goodwill Industries of Akron, Inc.* (May 14, 1997), 9th Dist. No. 17944, 1997 WL 270523.  Fallsway does point to the affidavits and depositions of Mr. Rigby's medical-care providers, which state that they did not feel harassed by Fallsway's communications.  However, these affidavits and depositions do not relate to the impact of Fallsway's actions on the Rigbys.  The Rigbys' claim of intentional infliction of emotional distress is not limited to Fallsway's contacts with Mr. Rigby's medical-care providers.  Rather, the Rigbys' complaint would also include Fallsway allegedly contacting the Rigbys at home.

{¶ 60}  Fallsway has failed to meet its *Dresher* burden of demonstrating an absence of genuine issue of material fact.  The Rigbys' fourth assignment of error is sustained.

### Fifth Assignment of Error

{¶ 61}  "Because the trial court erred in granting Fallsway summary judgment on counts six through nine, appellant Catherine Rigby still has a viable claim for loss of consortium."

{¶ 62}  In their fifth assignment of error, the Rigbys aver that the trial court erred by granting Fallsway's motion for summary judgment with regard to Mrs. Rigby's claim of loss of consortium.  We agree.

{¶ 63}  As pertinent to this assignment of error, the standard of review for summary judgment has been discussed in the first assignment of error.

{¶ 64}  Mrs. Rigby's claim for loss of consortium is a derivative action, deriving from a single accident or occurrence.  "The consortium action would not exist but for the primary action."  *Wang v. Goodyear Tire & Rubber Co.* (1990), 68 Ohio App.3d 13, 19, 587 N.E.2d 387.

{¶ 65}  In their motion for summary judgment, Fallsway asserted that, because Mr. Rigby's claims are dismissed via summary judgment, there can be no derivative action for loss of consortium.  This court declined to uphold the granting of summary judgment on the Rigbys' claim of intentional infliction of emotional distress.  Therefore, there exists a primary action to support the claim of loss of consortium.  Fallsway did not present any evidence to demonstrate an absence of genuine issue of material fact regarding the loss-of-consortium claim.

Summary judgment was improperly granted. The Rigbys' fifth assignment of error is sustained.

{¶ 66} The Rigbys' first, second, and third assignments of error are overruled. The Rigbys' fourth and fifth assignments of error are sustained. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,<br>reversed in part<br>and cause remanded.

WHITMORE, J., concurs.

CARR, P.J., concurs in judgment only.