[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} In October 1998, plaintiff-appellant Bernice Stein moved into Brighton Gardens, an assisted-living facility operated by defendant-appellee Marriott Senior Living Services, Inc. (Marriott). In December 1999, Stein fell at Brighton Gardens and was admitted to the hospital.[1] She was subsequently diagnosed with a hairline fracture to her spine. In late December, Stein was to be released from the hospital and to return to Brighton Gardens. Because of their mother's condition, Stein's two children contacted a private-duty nursing facility to inquire about a private-duty nurse who could assist their mother upon her release from the hospital. Stein's children also met with two members of the Brighton Gardens staff. After the meeting, it was agreed that the care given to assisted-living residents might be sufficient for Stein and that a private-duty nurse might not be needed. Shortly after Stein returned to Brighton Gardens, Stein's children received telephone calls from Stein, who complained that the care she was receiving was insufficient for her needs. Without consulting the management at Brighton Gardens, Stein's children arranged for 24-hour private-duty nursing care for Stein at a cost of $30,367.66.
 {¶ 3} In September 2001, Stein's son filed a complaint on her behalf against Marriott. The complaint, which sought recovery of monies for the private nursing care, set forth three claims for relief. In the first claim, Stein alleged that Marriott had not provided her with the level of care required in her Assisted Living Residency Agreement (Agreement). In her second claim, Stein alleged that Marriott had breached the Patients Bill of Rights.[2] The third claim alleged that Marriott had fraudulently misrepresented that it could provide Stein with the required care after her hospital stay. Marriott answered the complaint. After the parties had completed discovery, Marriott filed a motion for summary judgment, which Stein opposed. On October 7, 2002, the trial court granted Marriott's motion for summary judgment. It is from this judgment that Stein now appeals,[3] raising one assignment of error.
 {¶ 4} In her sole assignment of error, Stein contends that the trial court erred in granting Marriott's motion for summary judgment because reasonable minds could have found in her favor on all three of her claims for relief.
 {¶ 5} "In order to obtain summary judgment, the movant must show that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party."[4] When reviewing a grant of summary judgment, we review the record de novo and use the analysis set forth in Civ.R. 56(C).[5]
 {¶ 6} Stein first contends that the trial court erred in granting summary judgment to Marriott on her breach-of-contract claim because reasonable minds could have concluded that Marriott had failed to (1) refuse her return to Brighton Gardens, (2) offer a needs assessment, and (3) provide her with the personal-care services set forth in the Agreement. Marriott contends, however, that summary judgment was appropriate on Stein's breach-of-contract claim given that (1) Stein failed to produce any evidence showing that Marriott had failed to conduct a needs assessment following Stein's hospitalization; (2) that Marriott was not contractually obligated to refuse Stein's return under the Agreement; (3) that Stein had admitted that she needed skilled nursing care, which was beyond the scope of the personal-care services that Marriott was contractually required to provide under the Agreement; and (4) that Stein failed to produce any admissible evidence that Marriott had failed to provide Stein with the personal-care services set forth in the Agreement. We agree with Marriott.
 {¶ 7} Under the Agreement, Marriott was required to provide Stein with a maximum of 150 minutes per day of personal-care services based upon its periodic assessment of her needs.[6] Personal-care services were defined in Article I(B) of the Agreement: "(1) Assistance with activities of daily living such as bathing, dressing, eating, ambulation and toileting; (2) Supervision of medication administration; and (3) Assistance with managed incontinence." The Agreement additionally provided that Stein or Marriott could terminate the Agreement upon thirty days' written notice. Furthermore, Marriott could terminate the Agreement for several reasons, including a change in Stein's "physical or mental condition" or if the services or procedures required by Stein "extend[ed] beyond the certification, licensure, design, or staffing of assisted living."[7]
 {¶ 8} In her complaint, Stein, acknowledged, with respect to the time in question, that she needed care that "was essentially equivalent to skilled nursing care," and that such care was "beyond the scope of the Assisted Living Residency Agreement." Stein's children recognized this themselves when they contacted a private-duty nursing service prior to Stein's release from the hospital and then met with the staff of Brighton Gardens to discuss their mother's needs. Furthermore, both children testified that it was important that Stein remain at Brighton Gardens following her hospitalization because she thought of it as her home. Stein's son testified that he never considered moving Stein from Brighton Gardens following her hospitalization. Stein's daughter also testified that her mother was to return to Brighton Gardens following her hospitalization and that if she needed help at Brighton Gardens, they would get her the help. Thus, both Stein and her children acknowledged that they knew Stein needed care beyond the scope of the Agreement.
 {¶ 9} Furthermore, Stein's allegations that Marriott failed to provide her with assistance with her daily needs after her hospitalization were not supported by the record. When considering a motion for summary judgment, a court can only rely on facts that would be admissible at trial.[8] In her deposition, Stein stated only that she was happy with the care provided by Marriott. She identified no complaints about the facility. The only testimony Stein offered in opposition to Marriott's motion for summary judgment was the testimony of her children about telephone complaints they had received from their mother. Deposition testimony repeating statements made by someone else cannot be considered by the trial court in determining if there is a genuine issue of material fact.[9] Stein's claim that these telephone calls somehow fall under the excited-utterance exception to the hearsay rule is without merit.
 {¶ 10} Stein next contends that even if her needs exceeded the Agreement, Marriott still breached the Agreement because it failed to perform a needs assessment under the Agreement and to initiate the process to move her to a skilled nursing facility. Stein argues that Marriott's failure to refuse her return to Brighton Gardens also constituted a breach of the Agreement. We disagree.
 {¶ 11} Under the Agreement, Marriott was required to perform periodic assessments of Stein's needs. Stein failed to present any evidence that Marriott had failed to assess her needs. Furthermore, Stein failed to demonstrate how Marriott's failure to move her to a skilled nursing facility constituted a breach of the Agreement. The Agreement provided only that Marriott had the option to terminate Stein's residency at Brighton Gardens. Moreover, we need not address whether Marriott would eventually have needed to terminate the Agreement because of changes in Stein's condition, because Stein's children had already unilaterally arranged for 24-hour private-duty nursing care for their mother. Because Stein failed to present any admissible evidence that Marriott had breached the Agreement, reasonable minds could only conclude that Marriott was entitled to summary judgment on the breach-of-contract claim.
 {¶ 12} Stein next argues that reasonable minds could have concluded that Marriott had breached R.C. 2721.13, and that the trial court, therefore, erred in granting Marriott's motion for summary judgment.
 {¶ 13} R.C. 3721.13(A)(3) states that residents of a nursing home are entitled to rights "consistent with the program for which the resident contracted." R.C. 3721.17(I)(2)(a) provides that a nursing-home resident suing for a breach of rights under R.C. 3721.13 "may recover compensatory damages based upon a showing, by a preponderance of the evidence, that the violation of the resident's rights resulted from a negligent act or omission of the person or home and that the violation was the proximate cause of the resident's injury, death, or loss to person or property."
 {¶ 14} After reviewing all the evidence presented, summary judgment on Stein's statutory claim was proper for two reasons. First, as discussed more fully above, Stein failed to show that Marriott breached the Agreement. Second, the Act provides that there must be a violation by Marriott and that this violation must be "* * * the proximate cause of the resident's injury, death, or loss to person or property."[10]
Here, Stein only alleged economic loss, which is not contemplated under the statute. Because reasonable minds could not conclude that Marriott had breached its duty under the Agreement, the trial court did not err in granting Marriott's motion for summary judgment on this claim.
 {¶ 15} We further conclude that summary judgment was appropriate on Stein's claim for fraudulent misrepresentation. In order to demonstrate fraudulent misrepresentation, Stein had to show, among other things, justifiable reliance on a misrepresentation.[11]
 {¶ 16} In this case, Stein failed to demonstrate any justifiable reliance on any representations made by Marriott. The record shows that Stein's children contacted a private-duty nursing service prior to their mother's release from the hospital. Because they were concerned that Stein be able to return to Brighton Gardens and that her needs be met, they met with representatives of Brighton Gardens. They agreed, after that conference, to wait and see if normal assisted-living care would be adequate for their mother. After a short period of time, Stein's children determined on their own that their mothers' needs were not being met and unilaterally arranged for the additional nursing care that they had felt all along she needed. Because Stein could not show that she had justifiably relied on Marriott's representations that it would provide her with adequate care, reasonable minds could only find in favor of Marriott on her fraudulent-misrepresentation claim. We, therefore, overrule Stein's sole assignment of error and affirm the judgment of the trial court.
 {¶ 17} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Hildebrandt and Painter, JJ.
[1] It is undisputed that Marriott was not responsible for Stein's fall or for her injuries resulting therefrom.
[2] R.C. 3721.13.
[3] It is undisputed that Stein died prior to oral argument in this appeal. Because no party has been substituted for her pursuant to App.R. 29, we refer to her as the plaintiff-appellant herein.
[4] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241; see, also, Civ.R. 56(C).
[5] See Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[6] See Agreement at Article I.
[7] See Agreement at Article III.
[8] Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 631, 605 N.E.2d 936, fn. 4.
[9] Rigby v. Fallsway Equip. Co. Inc., 150 Ohio App.3d 155,2002-Ohio-6120, 779 N.E.2d 1056, at ¶¶ 41-42.
[10] R.C. 3721.17(I)(2)(a).
[11] Westfield Ins. Co. v. HULS Am., Inc. (1998), 128 Ohio App.3d 270,295, 714 N.E.2d 934.