[Cite as *U.S. Bank, N.A. v. Christmas*, 2016-Ohio-236.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| U.S. BANK, N.A. | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26695 |
| | : | |
| v. | : | Trial Court Case No. 2014-CV-4627 |
| | : | |
| LLOYD E. CHRISTMAS, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of January, 2016.

. . . . . . . . . . .

DARRYL E. GORMLEY, Atty. Reg. No. 0067595, and RACHELM. KUHN, Atty. Reg. No. 0090220, Reimer, Arnovitz, Chernek and Jeffrey Co., L.P.A., 30455 Solon Road, Solon, Ohio 44139
      Attorneys for Plaintiff-Appellee

ANDREW M. ENGEL, Atty. Reg. No. 0047371, Kendo, Alexander, Cooper & Engel, LLP, 7925 Paragon Road, Centerville, Ohio 45459-4245
      Attorney for Defendants-Appellants

. . . . . . . . . . . .

HALL, J.

{¶ 1} Lloyd and Valerie Christmas appeal from the judgment in foreclosure entered against them. We affirm.

## I. Background

{¶ 2} In December 2006, the Christmases executed a Note for $120,000 plus interest in favor of Primary Residential Mortgage Inc. and gave a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Primary Residential. The mortgage was recorded. The Christmases executed a loan modification agreement in November 2010 with the servicer of the loan at the time, Bayview Loan Servicing, LLC. In September 2011, they defaulted on the Note.

{¶ 3} In May 2012, the Mortgage, "along with all interest secured thereby, all liens, and any rights due or to become due thereon," was assigned to CitiMortgage, Inc. And around this time, an allonge to the Note was added endorsing it in blank. A year later, in May 2013, CitiMortgage assigned the Mortgage "with all interest, all liens, any rights due or to become due thereon" to U.S. Bank. On April 25, 2014, a notice of default, or "Acceleration Warning," was sent to the Christmases by the then servicer of the Note and Mortgage, Fay Servicing, LLC, giving the Christmases 30 days to cure the default by paying the arrearage.

{¶ 4} They did not pay, so on August 12, 2014, U.S. Bank filed a complaint in foreclosure against the Christmases, as well as the State of Ohio Department of Taxation and other necessary parties. In December, U.S. Bank assigned the Mortgage, along with "the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage," to Wilmington Savings Fund Society, FSB. Wilmington was then substituted as the plaintiff in this action.

{¶ 5} Wilmington moved for summary judgment, and the trial court granted the motion. In its subsequent judgment ordering foreclosure, the court took judicial notice that the State of Ohio had a lien against the property. The court ordered that the lien should be paid from the proceeds of the sale.

{¶ 6} The Christmases appealed.

## II. Analysis

{¶ 7} The Christmases assign two errors to the trial court. The first challenges the entry of summary judgment, and the second challenges the foreclosure judgment.

## A. Summary judgment

{¶ 8} The first assignment of error alleges that the trial court erred by entering summary judgment. The Christmases contend that the affidavit supporting the bank's summary-judgment motion is invalid. They also contend that the original plaintiff in this case did not have standing to bring the foreclosure action. Finally, they contend that not all of the conditions precedent to accelerating payment have been met.

{¶ 9} "[T]he determination of whether the trial court properly granted summary judgment * * * involves only questions of law and is considered on a de novo basis." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is proper if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). "[T]he moving party bears the initial burden of demonstrating that

there are no genuine issues of material fact concerning an essential element of the opponent's case. To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Those materials include "affidavits." Civ.R. 56(C). Civ.R. 56(E) sets forth three requirements for an affidavit: "(1) that it be made on personal knowledge, (2) that it set forth facts which would be admissible in evidence, and (3) that it affirmatively show the affiant to be competent to testify to the matters stated." *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 466-467, 423 N.E.2d 105 (1981). The rule also provides that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." Civ.R. 56(E).

**{¶ 10}** In this case, Wilmington supports its summary-judgment motion with an affidavit to which are attached the Note, the Modification Agreement, the Mortgage, the mortgage assignments, the Acceleration Warning, and loan payment records. The affidavit and attachments show that there are no genuine issues of material fact as to the essential elements in a foreclosure action. *Compare Wells Fargo Bank v. Scott*, 2d Dist. Montgomery No. 26552, 2015-Ohio-3269, ¶ 14 (setting forth the elements that the evidence in a foreclosure action must show). The Christmases contend, though, that the affidavit is invalid because it was not made on personal knowledge and because the attached Acceleration Warning, Modification Agreement, and loan payment records were not authenticated and contain inadmissible hearsay.

1. *The affidavit*

**{¶ 11}** The affidavit was made by Patricia Quattromani, designated as a "Senior

Manager" at Statebridge Company, LLC, the current servicer of the Christmases' loan and mortgage. Quattromani states that she is "authorized to execute this affidavit on behalf of Statebridge," that the statements made in the affidavit are based on her "personal knowledge," and that she is "competent to testify as to the matters contained herein." *Affidavit in Support of Summary Judgment*, ¶ 1-2. Quattromani states that Statebridge's business records are the basis of her knowledge:

4. In the regular performance of my job functions, I am familiar with business records maintained by Statebridge for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Statebridge. It is the regular practice of Statebridge's mortgage servicing business to make these records. In connection with making this affidavit, I have personally examined these business records.

5. Statebridge's business records that relate to the Borrower's loan that I reviewed and relied upon for the statements made in this Affidavit include but are not limited to the Note, Modification[,] Mortgage, Chain of Assignments of Mortgage, Acceleration Warning, Payment History, and Statebridge's electronic servicing system. True and exact copies of the Note, Mortgage, Chain of Assignments of Mortgage, Acceleration Warning, Payment History and Loan Histories are attached hereto marked as Exhibits

A-1 through A-5.

(Citations omitted.) *Id.* at ¶ 4-5. Quattromani states that the records show that the Christmases defaulted on the payments so Wilmington's predecessor in interest, U.S. Bank, accelerated the Note payments, making the entire loan balance due. Before filing this foreclosure action, Quattromani states, U.S. Bank caused the attached Acceleration Warning to be sent to the Christmases by certified, first-class mail. Quattromani also states that records show that the Christmases owe $127,859.27 in principal plus interest at 6.70% per annum from August 1, 2011.

**{¶ 12}** The Christmases did not present any evidence rebutting the affidavit.

**{¶ 13}** The Christmases contend that Quattromani does not have personal knowledge of the facts that she alleges. " 'Personal knowledge' is defined as, '[k]nowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' " *Brannon v. Rinzler*, 77 Ohio App.3d 749, 756, 603 N.E.2d (2d Dist.1991), quoting *Black's Law Dictionary* 873 (6th Ed.1990). "In the absence of any indication that the affidavits filed in support of Appellees' motions are not based on the necessary personal knowledge, it is generally accepted that '[a] mere assertion of personal knowledge satisfies Civ.R. 56(E) if the nature of the facts in the affidavit combined with the identity of the affiant creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit.' " *Ryan v. Huntington Trust*, 2015-Ohio-1880, 35 N.E.3d 19, ¶ 24 (7th Dist.), quoting *Residential Funding Co., LLC v. Thorne*, 6th Dist. Lucas No. L-09-1324, 2010-Ohio-4271, ¶ 70.

**{¶ 14}** Quattromani's "personal knowledge" here is of Statebridge's records and record-keeping procedures. She is averring that she knows that Statebridge's records

contain the documents attached to her affidavit and that these documents show the facts of the matter. That an affiant relies on business records for her facts does not mean that the facts are not based on personal knowledge. *Bibbs v. Cinergy Corp.*, 1st Dist. Hamilton No. C-010390, 2002 WL 537628, *2 (April 12, 2002). The nature of the facts in the affidavit and Quattromani's position with Statebridge are sufficient to establish her personal knowledge of the facts stated.

{¶ 15} The Christmases also contend that the business records attached to the affidavit are inadmissible hearsay because Quattromani could not authenticate them. "It is fundamental that the evidence offered by affidavit in support of or in opposition to a motion for summary judgment must also be admissible at trial, albeit in different form, in order for the court to rely on it." *Knoth v. Prime Time Marketing Mgmt., Inc.*, 2d Dist. Montgomery No. 20021, 2004-Ohio-2426, ¶ 13. *Accord Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 631, 605 N.E.2d 936 (1992), fn. 4 ("Only facts which would be admissible in evidence can be stated in affidavits and relied upon by the trial court when ruling upon a motion for summary judgment."). Accordingly, "[a]n affidavit based on hearsay is not proper evidence of a genuine issue of material fact pursuant to Civ.R. 56(E)." (Citation omitted.) *Rigby v. Fallsway Equip. Co.*, 150 Ohio App.3d 155, 2002-Ohio-6120, 779 N.E.2d 1056, ¶ 41 (9th Dist.).

{¶ 16} Evid.R. 901 requires that records be authenticated, that is, it must be established that the records are what the proponent claims they are. *See* Evid.R. 901(A). Authentication of business records is governed by Evid.R. 803(6), the hearsay exception for business records. *Great Seneca Financial v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 9 (1st Dist.), citing Evid.R. 901(B)(10). To admit a business record

into evidence under Evid.R. 803(6), a party must establish these elements: "(i) the record must be one regularly made in a regularly conducted activity; (ii) the contents of the record must have been entered or transmitted by a person with knowledge of the act, event, or condition recorded therein; and (iii) the act, event, or condition must have been recorded at or near the time of the transaction. The 'custodian of the records' or other qualified witness under Evid.R. 901(B)(10) must lay the requisite foundation for admissibility." *Id.* at ¶ 10, citing Evid.R. 803(6). Still, a business record may be excluded from evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Evid.R. 803(6).

{¶ 17} The Christmases contend that Quattromani does not know anything about the circumstances in which these business records were created, because they were created by a prior servicer. To authenticate a business record, a witness does not need " 'to have personal knowledge of the exact circumstances of preparation and production of the document.' " *Jefferson v. CareWorks of Ohio, Ltd.*, 193 Ohio App.3d 615, 2011-Ohio-1940, 953 N.E.2d 353, ¶ 11 (10th Dist.), quoting *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, ¶ 60 (10th Dist.). *Accord Fifth Third Mtge. Co. v. Campbell*, 2d Dist. Montgomery No. 25458, 2013-Ohio-3032, ¶ 8 (quoting the same). Nor does the witness need "firsthand knowledge of the transaction." *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3203, ¶ 36. Rather, the witness " 'must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business.' " *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991), quoting *Dell Publishing Co., Inc. v. Whedon*, 577 F.Supp. 1459, 1464 (S.D.N.Y.1984), fn. 5.

{¶ 18} This also applies to documents created by others that are incorporated into a business's own records. Because "if information is sufficiently trustworthy that a business is willing to rely on it in making business decisions, the courts should be willing to rely on that information as well." *Quill v. Albert M. Higley Co.*, 2014-Ohio-5821, 26 N.E.3d 1187, ¶ 44 (5th Dist.) (referring to this as the rationale behind the business-records exception), citing Staff Note, Evid.R. 803(6). Accordingly, a court may admit a document as a business record even when the proffering party is not the maker of the document, if the other requirements of Evid.R. 803(6) are met and the circumstances suggest that the record is trustworthy. *See Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, at ¶ 14; *Secy. of Veterans Affairs v. Leonhardt*, 2015-Ohio-931, 29 N.E.3d 1, ¶ 57 (3d Dist.); *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 24 (10th Dist.). Trustworthiness of a record is suggested by the proffer's incorporation into its own records and reliance on it. *Leonhardt* at ¶ 58.

{¶ 19} Here, Quattromani states that she has personal knowledge of Statebridge's record-keeping system and that the documents attached to her affidavit are kept in the regular course of the company's business. Although she does not explicitly say that the documents were incorporated into Statebridge's own records, the fact that they are currently in the company's records is sufficient for incorporation when the defendants have submitted no evidence to the contrary. Also, in its business of servicing loans, Statebridge plainly relies on the incorporated records. We see nothing that indicates that the source of the information in the records or the method or circumstances of preparation is untrustworthy.

{¶ 20} The documents attached to Quattromani's affidavit are admissible as business records under Evid.R. 803(6), so it is proper to consider them.

2. *Condition precedent to acceleration*

{¶ 21} The Christmases also argue that they were not given proper notice of default, a condition precedent to payment acceleration.

{¶ 22} Section 7 of the Note pertinently provides that "any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me." Quattromani states in her affidavit that "[p]rior to filing this foreclosure, on April 25, 2014, Substitute Plaintiff's predecessors in interest, caused the Acceleration warning to be sent via certified, and first class mail, to the Property." *Affidavit* at ¶ 8. The Christmases contend that Quattromani has no personal knowledge of how the letter was sent. But we have determined that the Acceleration Warning is admissible as a business record. So the affidavit and letter are evidence that proper notice was given. Because the Christmases did not present any evidence that the letter was not properly sent, there is no issue of fact on this matter.

{¶ 23} The Christmases also contend that the Acceleration Warning letter fails to comply with Section 6 of the Note, paragraph (C), which provides: "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a *certain date*, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means." (Emphasis added.). The Christmases contend that the

Acceleration Warning letter does not provide a "certain date" by which payment has to be made.

**{¶ 24}** The Acceleration Warning letter, dated April 25, 2014, states that "[t]he right to cure the default by payments in certified funds of the amount set forth herein shall expire in thirty days." The letter continues that "[a] failure to cure the default on or before the date set forth above may result in acceleration of the sums secured by the Mortgage Deed, foreclosure by judicial proceeding and sale of the property." And "[s]hould the default not be cured by the date set forth above on this notice, the Lender, at its option may require immediate payment in full of all sums secured by its mortgage without further demand and may foreclose its mortgage by judicial proceeding."

**{¶ 25}** The Christmases do not argue that the letter is confusing or misleading but argue only that it does not state a "certain date" by which to pay. We disagree. The Note states that the 30-day cure period begins the day that the acceleration notice is mailed. The Acceleration Warning letter was mailed on April 25, 2014, so the "certain date" by which the Christmases had to pay was May 25, 2014. We note that the Christmases do not allege that action was taken against them sooner than allowed by the Note and Mortgage.

### 3. *Standing*

**{¶ 26}** The Christmases allege that the original plaintiff in this case, U.S. Bank, failed to prove that it had standing to bring this action. They contend that no evidence was presented about who possessed the Note at the time the action was filed.

**{¶ 27}** The Ohio Supreme Court held in *Federal Home Loan Mort. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, that "the plaintiff in

a foreclosure action must have standing at the time that it files its complaint." *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 12. " 'The requirement of an "interest" can be met by showing an assignment of either the note or mortgage.' " *Bank of New York Mellon v. Clancy*, 2d Dist. Montgomery No. 25823, 2014-Ohio-1975, ¶ 12, quoting *Fed. Home Loan Mtge. Corp. v. Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶ 24. *But see BAC Home Loan Serv. v. McFerren*, 2013-Ohio-3228, 6 N.E.3d 51, ¶ 13 (9th Dist.) (requiring a showing of an interest in both the note and mortgage). Accordingly, "a properly assigned mortgage is 'sufficient to demonstrate * * * standing under *Schwartzwald*.' " *Clancy* at ¶ 28, quoting *HSBC Bank USA v. Sherman*, 1st Dist. Hamilton No. C-120302, 2013-Ohio-4220, ¶ 15.

**{¶ 28}** Here, attached to the complaint, filed in August 2014, are documents showing the chain of assignments that brought the Christmases' mortgage to U.S. Bank in May 2013. The Christmases do not claim, nor is there is any evidence suggesting, that any of the assignments were improper. So when it filed this action, U.S. Bank had the Christmases' properly assigned mortgage. Moreover, the assignment transferred not only the Mortgage but also "all interest, all liens, any rights due or to become due thereon." Any uncertainty as to the date that U.S. Bank came into possession of the Note is irrelevant, because the assignment of the Mortgage to U.S. Bank was sufficient to transfer both the Mortgage and the Note. *Compare Bank of New York Mellon v. Matthews*, 6th Dist. Fulton No. F-12-008, 2013-Ohio-1707, ¶ 15-16 (rejecting the appellants' argument that there was doubt as to whether the appellee possessed the note when the suit was filed).

**{¶ 29}** When U.S. Bank filed its complaint against the Christmases, then, it at least

had an interest in the Mortgage. This interest was sufficient to give it standing to bring this foreclosure action. The first assignment of error is overruled.

## B. Judicial notice of state tax liens

{¶ 30} The second assignment of error alleges that the trial court erred by taking judicial notice of the state tax lien on the Christmases' property.

{¶ 31} In its judgment entry, the trial court wrote: "The Court takes judicial notice that the State of Ohio Department of Taxation has a lien against the subject property. None of the parties have challenged the amount, validity, or priority of the lien. The interest of the State lienholder shall be transferred to the proceeds of sale and will be paid in accordance with the State's priority as set forth in the Preliminary Judicial Report." *Judgment Entry*, 5 (April 28, 2015). The Christmases argue that the court ruled on the validity and amount of the state's tax lien without any evidence.

{¶ 32} R.C. 2329.192 governs actions involving real property subject to a state lien. The statute provides that "the court shall take judicial notice that the state has a lien against the real estate." R.C. 2329.192(B)(3). The statute further states that if a party disputes the amount, validity, or priority of the state lien, the party must "serve the state lienholder and the attorney general with notice of the dispute." R.C. 2329.192(B)(6).

{¶ 33} Here, the Christmases never disputed the validity of the state's lien or the amount due. The Christmases say that they were not given notice of, and an opportunity to be heard, on the matter of judicial notice. But the trial court was required to take judicial notice of the tax lien. If the Christmases wanted to be heard, they should have asserted a dispute.

{¶ 34} The second assignment of error is overruled.

### III. Conclusion

**{¶ 35}** We have overruled both of the assignments of error presented. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J., and DONOVAN, J., concur.

Copies mailed to:

Darryl E. Gormley
Rachel M. Kuhn
Andrew M. Engel
State of Ohio Department of Taxation
Hon. Michael Tucker