[Cite as *U.S. Bank Trust, N.A. v. Watson*, 2020-Ohio-3412.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### PAULDING COUNTY

U.S. BANK TRUST, N.A., AS
TRUSTEE FOR LSF9 MASTER
PARTICIPATION TRUST,

    PLAINTIFF-APPELLEE,                CASE NO. 11-19-09

    v.

PAMELA J. WATSON, AKA
PAMELA J. LAMBERT ET AL.,           O P I N I O N

    DEFENDANTS-APPELLANTS.

---

Appeal from Paulding County Common Pleas Court
Trial Court No. CI 16 167

**Judgment Affirmed**

**Date of Decision:** June 22, 2020

---

APPEARANCES:

    *George C. Rogers* **for Appellants**

    *Robert C. Folland and David J. Dirisamer* **for Appellee**

Case No. 11-19-09

**PRESTON, J.**

{¶1} Defendants-appellants, Pamela J. Watson, now known as Pamela J. Lambert ("Pamela"), and William L. Lambert ("William") (collectively the "Watsons"),[1] appeal the February 9, 2018 and October 9, 2019 judgments of the Paulding County Court of Common Pleas denying their motions for summary judgment and for sanctions against plaintiff-appellee, U.S. Bank Trust, N.A., as trustee for LSF9 Master Participation Trust ("U.S. Bank"), and granting U.S. Bank's motion for summary judgment. For the reasons that follow, we affirm.

{¶2} This appeal, the third appeal brought by the Watsons in relation to the subject matter of this case, stems from U.S. Bank's efforts to foreclose on their property in Oakwood, Paulding County, Ohio. The factual background and lengthy procedural history of this case are discussed in detail in the Watsons' previous two appeals. *See HSBC Mtge. Servs., Inc. v. Watson*, 3d Dist. Paulding No. 11-14-03, 2015-Ohio-221 ("*Watson I*"); *HSBC Mtge. Servs., Inc. v. Watson*, 3d Dist. Paulding No. 11-16-03, 2017-Ohio-680 ("*Watson II*"). Thus, we will restate the history of this dispute only to the extent required to frame the issues presented in the instant appeal.

{¶3} On November 24, 2004, Pamela allegedly signed a promissory note in which she agreed to repay Accredited Home Lenders, Inc. ("Accredited") the sum

---

[1] In this opinion, we refer to Pamela and William as the Watsons rather than as the Lamberts because throughout their appellate brief, Pamela and William refer to themselves as the Watsons.

of $79,500 plus interest in monthly installments. (Doc. No. 1, Ex. A). The note was secured by a mortgage on real property in Oakwood, Paulding County, Ohio. (Doc. No. 1, Ex. B). In the mortgage, Accredited designated Mortgage Electronic Registration Systems, Inc. ("MERS") as its nominee. (*Id.*). Pamela purportedly stopped making payments on the note on April 1, 2011, sometime after which the note and mortgage were allegedly assigned and transferred to HSBC Mortgage Services, Inc. ("HSBC"). (Doc. No. 36, Exs. A-4, A-8). *See Watson II* at ¶ 2.

{¶4} On August 22, 2012, HSBC filed a complaint for foreclosure against the Watsons and the Paulding County Treasurer (the "first foreclosure"). *Watson I* at ¶ 2. In late April 2013, HSBC filed a motion for summary judgment. *Id.* at ¶ 4. Following HSBC's motion for summary judgment, the trial court established a discovery cutoff date of June 21, 2013. *Id.* at ¶ 5. On May 24, 2013, the Watsons served discovery requests on HSBC, including requests for admissions. *Id.* at ¶ 6. One of these requests for admissions asked HSBC to admit that "HSBC does not have possession of the original note * * *." *Id.* at ¶ 10. Another requested that HSBC admit that neither the person allegedly authorized to assign the mortgage to HSBC "nor [MERS] sought or received permission from the Bankruptcy Trustee for [Accredited] to execute the assignment of [the Watsons'] mortgage [to HSBC]." *Watson II* at ¶ 3. On June 28, 2013, the trial court granted HSBC's motion for additional time to respond to the Watsons' discovery requests and ordered that

HSBC respond to the Watsons' requests by July 23, 2013. *Watson I* at ¶ 7. Yet, despite this extension, HSBC failed to respond to the Watsons' discovery requests by July 23, 2013. *Id.* at ¶ 9.

{¶5} On August 2, 2013, the Watsons filed a memorandum in opposition to HSBC's motion for summary judgment as well as their own motion for summary judgment. *Watson I*, 2015-Ohio-221, at ¶ 10. To support their motion for summary judgment, the Watsons relied on the requests for admissions they propounded to HSBC, which were deemed admitted by HSBC's failure to timely respond. *Id. See* Civ.R. 36(A)(1). On August 30, 2013, HSBC filed a combined reply brief in support of its motion for summary judgment and memorandum in opposition to the Watsons' motion for summary judgment. *Watson I* at ¶ 12. HSBC also filed a "Civ.R. 36(B) motion to withdraw requests for admission deemed admitted." *Id.* On September 12, 2013, the Watsons filed their reply brief in support of their motion for summary judgment as well as a response to HSBC's motion to withdraw its admissions. *Id.* at ¶ 13.

{¶6} On February 12, 2014, the trial court issued an order granting HSBC's motion to withdraw its admissions, granting HSBC's motion for summary judgment, and denying the Watsons' motion for summary judgment. *Id.* at ¶ 14. On April 18, 2014, the trial court issued a decree of foreclosure in favor of HSBC and ordered that the Watsons' property be sold. *Id.* at ¶ 15. The Watsons

subsequently appealed, arguing that the trial court erred by granting HSBC's motion to withdraw its deemed admissions and by granting HSBC's motion for summary judgment.

{¶7} On January 26, 2015, this court reversed the judgment of the trial court. *Id.* at ¶ 38. Specifically, we concluded that "the trial court abused its discretion by granting HSBC's motion to withdraw its admissions without allowing [the Watsons] to conduct additional discovery." *Id.* at ¶ 35. With respect to the trial court's rulings on the parties' motions for summary judgment, we held that because the trial court's rulings "were based on its erroneous discovery order granting HSBC's motion to withdraw its admissions," "ruling on either party's motion for summary judgment was premature." *Id.* Accordingly, we remanded the matter to the trial court with the observation that the trial court could "proceed in any number of ways, including, for example, reopening discovery, allowing additional motions concerning discovery, and allowing the resubmission of motions for summary judgment." *Id.* at ¶ 37.

{¶8} On remand, HSBC filed a motion for substitution of plaintiff, in which it stated that U.S. Bank had been assigned the mortgage on January 6, 2015 and that U.S. Bank was thus the real party in interest. *Watson II*, 2017-Ohio-680, at ¶ 5. On April 23, 2015, the Watsons filed a memorandum in opposition to HSBC's motion for substitution of plaintiff. *Id.* at ¶ 6. In their memorandum in opposition, the

Watsons, "[r]elying upon HSBC's admission that [it] did not possess the original note, * * * argued that neither HSBC nor U.S. Bank could be real parties in interest as HSBC had nothing to transfer to U.S. Bank that would justify a substitution of plaintiff * * *." *Id.* Nevertheless, the trial court ultimately granted HSBC's motion to substitute U.S. Bank as plaintiff. *Id.* at ¶ 7.

{¶9} On the same day that the Watsons filed their memorandum in opposition to HSBC's motion for substitution of plaintiff, they also filed a motion for R.C. 2323.51 sanctions against HSBC. *Id.* at ¶ 6. In addition, on February 29, 2016, the Watsons filed a motion for summary judgment. *Id.* at ¶ 7. Finally, on June 13, 2016, the Watsons submitted a motion asking the trial court to reconsider its decision to allow the substitution of U.S. Bank as plaintiff. *Id.* A hearing on all three motions was set for June 24, 2016. *Id.*

{¶10} At the hearing, HSBC and U.S. Bank argued that the Watsons' motion for summary judgment should be denied to allow for the reopening of discovery. *See id.* at ¶ 7. However, in a July 5, 2016 judgment, the trial court "declined to reopen discovery, deemed the admissions of HSBC admitted, * * * granted [the Watsons'] motion for summary judgment," and dismissed the first foreclosure. *Id.* (*See* Doc. No. 16, Ex. 10). In addition, the trial court rejected the Watsons' request to reconsider its ruling allowing U.S. Bank to be substituted as plaintiff, and "[s]ince the alleged frivolous conduct arose from HSBC's motion to substitute plaintiff," the

trial court denied the Watsons' motion for sanctions on grounds that granting the motion would be inconsistent with the affirmation of its decision permitting the substitution. *Watson II* at ¶ 8. Although U.S. Bank and the Watsons both appealed from the trial court's judgment, U.S. Bank subsequently dismissed its appeal. (*See* Doc. No. 16, Exs. 11, 12). In their second appeal, the Watsons argued that the trial court erred by permitting U.S. Bank to be substituted as plaintiff and by denying their motion for sanctions.

{¶11} On February 27, 2017, this court affirmed the trial court's judgment. *Watson II*, 2017-Ohio-680, at ¶ 18. First, we concluded that the Watsons were not prejudiced by the substitution of U.S. Bank as plaintiff. *Id.* at ¶ 11. We observed that, "[i]f anything, [the order substituting U.S. Bank as plaintiff] is more likely to operate in [the Watsons'] favor as the substitution of U.S. Bank for HSBC binds U.S. Bank to the summary judgment order that disposed of [the first foreclosure]." *Id.* Furthermore, we held that the trial court did not abuse its discretion by denying the Watsons' motion for sanctions under R.C. 2323.51. *Id.* at ¶ 17. We concluded that, even assuming that HSBC's actions amounted to frivolous conduct, the Watsons were not adversely affected parties who were eligible for an award of costs, fees, and other expenses under R.C. 2323.51. *Id.* at ¶ 16-17. We justified this conclusion, in part, by noting that "HSBC and U.S. Bank would both be barred by res judicata from filing this exact same claim a second time * * *." *Id.* at ¶ 17.

{¶12} Meanwhile, on November 17, 2016, while the appeal in *Watson II* was pending, U.S. Bank refiled the complaint for foreclosure against the Watsons (the "second foreclosure"). (Doc. No. 1). On December 5, 2016, the Watsons filed their answer to U.S. Bank's complaint. (Doc. No. 7). That same day, the Watsons filed a combined motion for summary judgment and motion for R.C. 2323.51 sanctions. (Doc. No. 8). In their combined motion, the Watsons argue that they are entitled to summary judgment because the doctrine of res judicata precludes U.S. Bank from "asserting the same previously dismissed claim based on the same asserted documents." (*Id.*). In addition, the Watsons argue that "[t]he refiling of the lawsuit four months after it was previously dismissed on summary judgment and after an appeal of such prior judgment was abandoned is absolutely and objectively frivolous pursuant to R.C. 2323.51." (*Id.*).

{¶13} On January 3, 2017, U.S. Bank filed a memorandum in opposition to the Watsons' motion for summary judgment and a memorandum in opposition to the Watsons' motion for sanctions. (Doc. Nos. 14, 15). On January 11, 2017, the Watsons filed their reply brief in support of their motion for summary judgment, along with exhibits in support of their motions for summary judgment and for sanctions. (Doc. No. 16). In addition, on July 11, 2017, the Watsons provided the trial court with a copy of our decision in *Watson II* and suggested that our decision in *Watson II* prevents U.S. Bank from disputing that it is barred from bringing the

second foreclosure. (Doc. No. 22). On February 9, 2018, the trial court denied both the Watsons' motion for summary judgment and their motion for sanctions. (Doc. No. 23).

{¶14} On March 19, 2018, the Watsons filed a motion asking the trial court to modify or supplement its February 9, 2018 judgment entry. (Doc. No. 27). In their motion, the Watsons requested that the trial court explicitly address the doctrine of res judicata and explain why the doctrine of res judicata does not bar U.S. Bank from maintaining the second foreclosure. (*Id.*). On March 23, 2018, U.S. Bank filed a memorandum in opposition to the Watsons' motion to modify or supplement. (Doc. No. 29). On April 5, 2018, the Watsons filed their reply brief in support of their motion to modify or supplement. (Doc. No. 30). On June 14, 2018, the trial court issued an entry in which it clarified the rationale for its conclusion that the second foreclosure is not barred by the doctrine of res judicata. (Doc. No. 31).

{¶15} On January 22, 2019, U.S. Bank filed a motion for summary judgment. (Doc. No. 36). On May 30, 2019, the Watsons filed their memorandum in opposition to U.S. Bank's motion for summary judgment. (Doc. No. 45). That same day, the Watsons filed a second motion for summary judgment and a second motion for sanctions under R.C. 2323.51. (Doc. No. 46). In their second motion for summary judgment, the Watsons reassert their argument that they are entitled to

summary judgment based on the doctrine of res judicata, and they further argue that summary judgment in their favor is appropriate because U.S. Bank does not, and will never, present admissible evidence sufficient to support its claim. (*Id.*); (*See* Doc. No. 49). On June 13, 2019, U.S. Bank filed a combined reply brief in support of its motion for summary judgment and memorandum in opposition to the Watsons' second motion for summary judgment and second motion for sanctions. (Doc. No. 48). On June 28, 2019, the Watsons filed their reply brief in support of their second motion for summary judgment and second motion for sanctions. (Doc. No. 49).

{¶16} On October 8, 2019, the trial court granted U.S. Bank's motion for summary judgment, denied the Watsons' second motion for summary judgment, and denied their second motion for sanctions. (Doc. No. 50). Consequently, the trial court issued a decree of foreclosure in favor of U.S. Bank and ordered that the Watsons' property be sold. (*Id.*).

{¶17} On November 5, 2019, the Watsons filed a notice of appeal. (Doc. No. 51). They raise three assignments of error for our review. For ease of discussion, we begin by considering the Watsons' first and second assignments of error together, followed by their third assignment of error.

**Assignment of Error No. I**

**The trial court erred in its judgment entry of Feb. 9, 2018 and in Oct. 9, 2019 [sic] in denying the Watsons' motion for summary**

**judgment that asserted U.S. Bank's complaint was barred by the doctrine of res judicata.**

**Assignment of Error No. II**

**The trial court erred in its Oct. 9, 2019 judgment entry in denying the Watsons' motion for summary judgment and granting U.S. Bank's motion for summary judgment when discovery was closed, the facts were undisputed, and the complaint failed to state a cause of action and the evidence failed to support the complaint.**

{¶18} In their first and second assignments of error, the Watsons argue that the trial court erred by denying their motions for summary judgment and by granting U.S. Bank's motion for summary judgment. Specifically, in their first assignment of error, the Watsons argue that the trial court should have granted their motions for summary judgment because the doctrine of res judicata precludes U.S. Bank from bringing the second foreclosure and from relitigating issues that were resolved against it in the first foreclosure. In their second assignment of error, the Watsons argue that the trial court erred by granting U.S. Bank's motion for summary judgment and by denying their second motion for summary judgment because the affidavit U.S. Bank submitted in support of its motion was not made by someone with personal knowledge sufficient to authenticate documents such as the promissory note, mortgage, and notice of default, photocopies of which were attached to the affidavit and used by U.S. Bank to prove its claim. They also contend that the averments in the affidavit were not based on the affiant's personal

knowledge. Finally, the Watsons take issue with U.S. Bank's evidence establishing the chain of assignments from the original lender and mortgagee to U.S. Bank.

{¶19} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶20} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of

a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

{¶21} Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, quoting *Anderson* at 251-252.

{¶22} We begin with the Watsons' first assignment of error, in which they argue that the trial court erred by denying their motions for summary judgment because, contrary to the trial court's conclusion, the doctrine of res judicata precludes U.S. Bank from bringing the second foreclosure and from relitigating certain issues that U.S. Bank must resolve in its favor to prevail on its claim. In Ohio, "'"[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel."'" *Crown Chrysler Jeep, Inc. v. Boulware*, 10th Dist. Franklin No. 15AP-162, 2015-Ohio-5084, ¶ 18, quoting *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-

Ohio-1704, ¶ 27, quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 6. Both concepts are in play in this case.

{¶23} Claim preclusion, the first type of preclusion, "'prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.'" *Id.*, quoting *Schachter* at ¶ 27. "'The previous action is conclusive for all claims that were or that could have been litigated in the first action.'" *Id.*, quoting *Schachter* at ¶ 27. The Supreme Court of Ohio has identified four conditions that must be present for claim preclusion to apply:

(1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action.

*State ex rel. Dept. of Edn. v. Ministerial Day Care*, 8th Dist. Cuyahoga No. 103685, 2016-Ohio-8485, ¶ 14, citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, ¶ 84, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir.1997) (construing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995)). For purposes of claim preclusion, a "transaction" has been defined as a "'common

nucleus of operative facts.'" *Grava* at 382, quoting 1 Restatement of the Law 2d, Judgments, Section 24, Comment b (1982).

{¶24} On the other hand, issue preclusion, the second type of preclusion, "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *O'Nesti* at ¶ 7, citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). "Issue preclusion applies even if the causes of action differ." *Id.*, citing *Fort Frye* at 395. Issue preclusion prevents the relitigation of an issue where (1) the party against whom issue preclusion is asserted was a party or is in privity with a party to a prior action; (2) the prior action ended in a final judgment on the merits following a full and fair opportunity to litigate the issue; (3) the issue was actually litigated and determined and necessary to the judgment in the prior action; and (4) the issue sought to be precluded is identical to the issue decided in the prior action. *See State ex rel. Davis v. Pub. Emp. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 27-28, quoting *Fort Frye* at 395; *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2016-10-014, 2017-Ohio-4370, ¶ 24, citing *Balboa Ins. Co. v. S.S.D. Distrib. Sys.*, 109 Ohio App.3d 523, 527 (12th Dist.1996); *Wilson v. Semco, Inc.*, 152 Ohio App.3d 75, 2002-Ohio-4695, ¶ 17 (3d Dist.), quoting *Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 180-181 (1st Dist.1984).

{¶25} Before addressing the merits of the Watsons' first assignment of error, we feel that we must clarify their arguments. Throughout their filings in the trial court and in their appellate brief, the Watsons regularly refer to the doctrine of res judicata. However, they never differentiate between claim preclusion and issue preclusion or specify in any given instance whether they are arguing for the application of claim preclusion or whether they are arguing for the application of issue preclusion. Yet, after reviewing the Watsons' appellate arguments in light of the arguments they made at the trial-court level, it is evident that they rely to some extent on both types of preclusion. Although they do not themselves outline their arguments in the following manner, we believe that the Watsons are in substance making three separate arguments based on claim preclusion and issue preclusion.

{¶26} First, the Watsons repeatedly invoke this court's discussion of res judicata in *Watson II* and insist that our statement that U.S. Bank "would * * * be barred * * * from filing [the] exact claim a second time" was "necessary to the analysis and result reached" in *Watson II*. (*See* Appellants' Brief at 6-7, 10-11); (*See* Doc. Nos. 22, 30). As a result, the Watsons seem to contend that issue preclusion bars U.S. Bank from relitigating the issue of whether claim preclusion prevents it from filing and maintaining the second foreclosure. Second, the Watsons expressly assert that, irrespective of our decision in *Watson II*, the trial court's July 5, 2016 judgment dismissing the first foreclosure was a final adjudication on the

merits that itself operates to preclude U.S. Bank from bringing the second foreclosure. (*See* Appellants' Brief at 6, 11); (*See* Doc. Nos. 7, 8, 16, 30). Finally, the Watsons seem to suggest that the matters deemed admitted in the first foreclosure, specifically those matters related to HSBC's and U.S. Bank's possession of the promissory note and the validity of earlier mortgage assignments, remain conclusively established for purposes of the second foreclosure. (*See* Appellants' Brief at 6-7); (*See* Doc. Nos. 27, 46, 49). Thus, the Watsons appear to argue that issue preclusion prohibits U.S. Bank from relitigating the subject matter of the deemed admissions and that they are entitled to judgment as a matter of law because U.S. Bank is unable to relitigate these issues. We examine each of these arguments in turn, beginning with the argument that our decision in *Watson II* prevents U.S. Bank from challenging the Watsons' contention that claim preclusion bars the second foreclosure.

{¶27} In *Watson II*, we reviewed two issues stemming from the trial court's July 5, 2016 judgment in the first foreclosure. However, the only part of *Watson II* relevant to the present case is our analysis of the trial court's decision to deny the Watsons' motion for R.C. 2323.51 sanctions. In the trial court, the Watsons argued that sanctions should be imposed against HSBC because HSBC engaged in frivolous conduct by moving to substitute U.S. Bank as plaintiff. (*See* Doc. No. 16, Exs. 5, 6, 7, 10). After reaffirming its decision to allow U.S. Bank to be substituted as

plaintiff for HSBC, the trial court denied the Watsons' motion for sanctions, concluding that it could not "grant [HSBC's] motion for substitution and call it frivolous at the same time." (Doc. No. 16, Ex. 10). In its July 5, 2016 judgment denying the Watsons' motion for sanctions, the trial court did not reach the question of whether the Watsons were adversely affected by HSBC's conduct. (*See id.*). *See* R.C. 2323.51(B)(1) (a party must be adversely affected by frivolous conduct to be entitled to an award of costs, fees, and other expenses).

{¶28} On appeal, we affirmed the trial court's judgment denying the Watsons' motion for sanctions. *Watson II*, 2017-Ohio-680, at ¶ 17-18. We acknowledged that "[s]ince the trial court found that HSBC did not engage in frivolous conduct, it did not proceed to make a determination for the record as to whether [the Watsons were parties] adversely affected by frivolous conduct." *Id.* at ¶ 14. However, rather than limiting our review to a determination of whether the trial court correctly concluded that HSBC did not engage in frivolous conduct by moving to substitute U.S. Bank as plaintiff, we held that "[e]ven * * * assum[ing] that HSBC's actions amounted to frivolous conduct, [the Watsons were not] adversely affected part[ies] that [were] eligible for an award of sanctions for frivolous conduct." *Id.* at ¶ 17. In reaching this conclusion, we observed that Civ.R. 17 and Civ.R. 25, the rules relating to the real-party-in-interest requirement and the substitution of parties, exist, among other reasons, to assure the defendant that he

"'will be protected against another suit brought by the real party [in] interest on the same matter.'" *Id.* at ¶ 15, quoting *Argent Mtge. Co. v. Ciemins*, 8th Dist. Cuyahoga No. 90698, 2008-Ohio-5994, ¶ 10, quoting *Shealy v. Campbell*, 20 Ohio St.3d 23 (1985). In our view, the Watsons were not adversely affected by HSBC's motion for substitution in part because their interest in being protected from successive suits based on the same claim for foreclosure was not impaired by the substitution of U.S. Bank as plaintiff. Specifically, we held:

> [B]ringing in U.S. Bank was not going to expose [the Watsons] to the risk of enduring another suit on this same matter. HSBC and U.S. Bank would both be barred by res judicata from filing this exact claim a second time as HSBC was bound by the assignment [of its interest to U.S. Bank], which effectively admitted that [it is] no longer a real party in interest, and U.S. Bank was bound by HSBC's admission that it did not have the promissory note.

*Id.* at ¶ 16.

{¶29} Following our decision in *Watson II*, U.S. Bank filed an application for reconsideration in this court in which U.S. Bank asked us to reconsider our statement that it would be barred by res judicata from filing an identical claim for foreclosure against the Watsons. (*See* Doc. No. 22). Following briefing on the issues presented in U.S. Bank's application, we denied U.S. Bank's application for

reconsideration. (*See id.*). There is no indication in the record that U.S. Bank further appealed to the Supreme Court of Ohio from our decision in *Watson II*.

{¶30} After reviewing our decision in *Watson II* and considering the unique circumstances of this case, we conclude that issue preclusion does not prevent U.S. Bank from litigating the issue of whether claim preclusion bars it from maintaining the second foreclosure. As indicated above, issue preclusion applies only when the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior action and when the issue was actually litigated in the prior action. We believe that, under the peculiar facts of this case, U.S. Bank was not afforded a full opportunity in the first foreclosure to litigate the claim-preclusive effect of the first foreclosure on subsequent foreclosure actions and that the issue was not actually litigated.

{¶31} First, as far as we can discern from the record, the question of whether the first foreclosure precludes the refiling of an identical claim for foreclosure in a subsequent foreclosure action was not briefed, passed on, or even mentioned at any time prior to the issuance of our opinion in *Watson II*. It does not appear that the Watsons supported their motion for summary judgment or their motion for sanctions in the first foreclosure with an argument related to claim preclusion; nor does it appear that U.S. Bank opposed the Watsons' motions or supported its own motions in the first foreclosure with such an argument. In addition, in its July 5, 2016

judgment, the trial court did not make any determinations with respect to the claim-preclusive effect of the first foreclosure. This is hardly surprising given that we used the supposedly claim-preclusive effect of the first foreclosure to support our conclusion that the Watsons were not adversely affected by U.S. Bank's substitution as plaintiff—an issue that the trial court never reached. Finally, there is no indication that the issue was raised in the parties' appellate briefs informing our decision in *Watson II*. Thus, our determination in *Watson II* of the issue of the claim-preclusive effect of the first foreclosure does not appear to be the product of *any* actual litigation of the issue.

{¶32} Furthermore, given the distinctive circumstances of this case, U.S. Bank was not afforded, and in fact could not have been afforded, an opportunity to obtain regular appellate review of our determination of the issue of the claim-preclusive effect of the first foreclosure. In the average case, the issue of the claim-preclusive effect of a prior final judgment is determined in the first instance at the trial-court level. In many cases, the party who receives an unfavorable decision on the issue of claim preclusion may then appeal the trial court's determination to a court of appeals, and in most instances, the court of appeals must entertain the party's appeal. If the issue of claim preclusion is resolved adversely to the party by the court of appeals, the party may apply for reconsideration of the appellate court's decision. Finally, if the party's application for reconsideration is denied or if the

issue of claim preclusion is decided against the party even after reconsideration, the party may petition the Supreme Court of Ohio for review, and aside from a few exceptions, the Supreme Court of Ohio has discretion to accept or reject the party's petition for review.

{¶33} Yet, this case is not the average case. In this case, as far as we can tell, the issue of the claim-preclusive effect of the first foreclosure was determined for the first time in our opinion in *Watson II*. As a result, U.S. Bank was deprived of the opportunity to utilize the entire array of options for appellate review normally available to parties who are adversely affected by decisions relating to the applicability of claim preclusion. U.S. Bank's only options were to ask this court to reconsider our decision in *Watson II* and to petition the Supreme Court of Ohio for review. However, both options have their limitations. In deciding whether to accept applications for reconsideration, we conduct a type of review that is much more limited and specialized than the review we perform when reviewing many trial court errors in the first instance. In addition, unlike most of the cases that are presented to the courts of appeals for review, the Supreme Court of Ohio likely would not have been required to entertain an appeal by U.S. Bank of our decision in *Watson II*. Therefore, the procedures available to U.S. Bank in this particular case would not have been suitable substitutes for the ordinary procedures, i.e., an initial determination of the issue of claim preclusion and the option of an appeal as

of right, only then followed by an application for reconsideration or further appeal. U.S. Bank may have had *some* opportunity to litigate the issue of claim preclusion by filing an application for reconsideration and an appeal to the Supreme Court of Ohio. However, even if U.S. Bank had taken advantage of both procedures, under the facts of this case, U.S. Bank would never have had a *full* opportunity to litigate the issue. For this reason, and for the reasons detailed in the three preceding paragraphs, we conclude that our decision in *Watson II* does not bar U.S. Bank from litigating the issue of the claim-preclusive effect of the first foreclosure. Thus, to the extent that the Watsons based their motions for summary judgment on the issue-preclusive effect of our decision in *Watson II*, the trial court did not err by denying their motions.

{¶34} Having concluded that our decision in *Watson II* does not prevent U.S. Bank from litigating the issue of the claim-preclusive effect of the first foreclosure, we now consider whether the trial court's July 5, 2016 judgment in the first foreclosure bars U.S. Bank from maintaining the second foreclosure. In its February 9, 2018 judgment denying the Watsons' first motion for summary judgment, the trial court did not specifically address the claim-preclusive effect of the July 5, 2016 judgment. (*See* Doc. No. 23). However, in the trial court's June 14, 2018 journal entry in which it further clarified its decision to deny the Watsons' first motion for summary judgment, the trial court explained that the second foreclosure "is not the

exact same claim as [the first foreclosure] as four additional years of non-payment are alleged to have occurred in [the second foreclosure]. [U.S. Bank] is not barred * * * by the doctrine of res judicata as the present cause of action has not been litigated." (Doc. No. 31).

{¶35} We conclude that the trial court did not err by holding that the doctrine of claim preclusion does not prevent U.S. Bank from bringing the second foreclosure, albeit for different reasons than offered by the trial court. Contrary to the trial court's assertion in its June 14, 2018 journal entry, the claim in the second foreclosure is identical to the claim in the first foreclosure despite the four additional years of alleged nonpayment. In the second foreclosure, U.S. Bank is demanding the same principal payment, $74,111.16, as it (and HSBC) demanded in the first foreclosure. (Doc. No. 1); (Doc. No. 16, Ex. 1). Furthermore, in the second foreclosure, U.S. Bank is using the same alleged default date as was used in the first foreclosure. (Doc. No. 1); (Doc. No. 16, Ex. 1). Though additional payments have purportedly been missed, the claim in the second foreclosure arises from the same set of operative facts as the claim in the first foreclosure—that is, Pamela's alleged failure to make her April 2011 mortgage payment and the consequent acceleration of the entire principal balance of her loan. *See U.S. Bank Natl. Assn. v. Gullotta*, 120 Ohio St.3d 399, 2008-Ohio-6268, ¶ 27-29, 31, 36 (concluding that a bank's third complaint for foreclosure was barred by claim preclusion, despite the fact that

the third complaint was amended to use a different start date for the collection of interest, because the complaint "still arose from [the] original default, when the entire principal balance became due"). It is therefore the same claim. As a result, in concluding that claim preclusion does not bar the second foreclosure because the claim in the second foreclosure is not the same as the claim in the first foreclosure, the trial court erred.

{¶36} Nevertheless, "[a] reviewing court will not reverse a correct judgment merely because a trial court relied on an erroneous reason as the basis for its determination." *Hassey v. Columbus*, 10th Dist. Franklin No. 17AP-726, 2018-Ohio-3958, ¶ 33, citing *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990) and *Reid v. Plainsboro Partners, III*, 10th Dist. Franklin No. 09AP-442, 2010-Ohio-4373, ¶ 20. In its July 5, 2016 judgment in the first foreclosure, the trial court "consider[ed] the admissions deemed admitted, specifically that the note * * * is endorsed in blank and that [U.S. Bank] is not in possession of the note." (Doc. No. 16, Ex. 10). After holding that U.S. Bank would need to prove its possession of the note indorsed in blank to prevail in the first foreclosure and that U.S. Bank could not meet this burden due to the deemed admissions, the trial court granted the Watsons' motion for summary judgment and dismissed U.S. Bank's complaint. (*Id.*).

{¶37} While the trial court did not explicitly state that it was dismissing the first foreclosure because U.S. Bank could not prove that it had standing, given that the court's judgment was based entirely on U.S. Bank's inability to prove possession of the promissory note, the only fair reading of the trial court's judgment is that it dismissed the first foreclosure on standing grounds. *See generally Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 20-39 (holding that, in a foreclosure action, a party does not have standing to invoke the jurisdiction of a common pleas court unless it can establish that it had an interest in the note or mortgage at the time suit was filed). In a foreclosure action, a dismissal for lack of standing does not involve an adjudication on the underlying indebtedness and has "no effect on the underlying duties, rights, or obligations of the parties." *Id.* at ¶ 40. Furthermore, "the dismissal of an action because one of the parties is not a real party in interest or does not have standing is not a dismissal on the merits for purposes of res judicata." *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, ¶ 51. Because the trial court's July 5, 2016 dismissal was not an adjudication on the merits, claim preclusion does not bar U.S. Bank from bringing the second foreclosure. *See Douglas v. Williams*, 9th Dist. Summit No. 27459, 2015-Ohio-1721, ¶ 5; *U.S. Bank Natl. Assn. v. Perry*, 8th Dist. Cuyahoga No. 99608, 2013-Ohio-3814, ¶ 12 ("Because the dismissal was without prejudice, U.S. Bank can refile the [foreclosure] action when it has uncontroverted evidence of its standing.").

Therefore, although the trial court's reasons were incorrect, the trial court did not err by concluding that claim preclusion does not bar U.S. Bank from bringing the second foreclosure. Accordingly, to the extent that the Watsons based their motions for summary judgment on the claim-preclusive effect of the first foreclosure, the trial court did not err by denying their motions.

{¶38} Finally, we consider whether the trial court erred by determining that U.S. Bank is not precluded in the second foreclosure from litigating the matters deemed admitted in the first foreclosure. In denying the Watsons' first motion for summary judgment, the trial court held that "the admission that [U.S. Bank] did not have the note was for [the first foreclosure] action only" and that U.S. Bank "is not bound by [its] admission in [the first foreclosure]." (Doc. No. 23). The Watsons contend that the trial court erroneously credited U.S. Bank's "simplistic argument * * * that judicial admissions are limited to the case in which they are made, and are not binding in a new case," an argument that the Watsons concede "is true, but a misdirection." (Appellants' Brief at 6). The Watsons argue that, in this case, preclusion arises not by operation of the deemed admissions alone, but "from the final judgment that occurred as a result of the evidence in the first case," "from the failure to pursue an appeal taken from said judgment," and "from the failure to appeal the denial of [the application for reconsideration] * * *." (*Id.* at 6-7).

{¶39} The Watsons' arguments are without merit. Under Civ.R. 36(A), "[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Civ.R. 26(B) set forth in the request, that relate to statements or opinions of fact or of the application of law to fact * * *." "Any matter admitted under [Civ.R. 36] is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Civ.R. 36(B). However, "[a]ny admission made by a party under this rule is for the purpose of the pending action only and is not an admission by the party for any other purpose nor may it be used against the party in any other proceeding." *Id.*

{¶40} Although the text of Civ.R. 36 suggests that matters admitted in one action are not given issue-preclusive effect in a subsequent action, we have been unable to locate any Ohio state court decisions squarely addressing this issue. The few cases that we have found that deal with the attempted use of Civ.R. 36 admissions in subsequent actions did not arise, as this case does, out of circumstances in which a matter is deemed admitted in one action, a judgment is entered in that action solely on the basis of the admitted matter, and a party seeks to litigate the subject matter of the deemed admission in a second action. Moreover, the courts that have examined the conclusiveness of Civ.R. 36 admissions in subsequent actions have not done so through the lens of issue preclusion.

Nevertheless, after examining Civ.R. 36, precedent of the Supreme Court of Ohio, and other relevant case law, we believe that Civ.R. 36 admissions should not be granted issue-preclusive effect in subsequent actions because issues established by Civ.R. 36 admissions are not "actually litigated."

{¶41} In *State ex rel. Davis v. Public Employees Retirement Board*, the Supreme Court of Ohio reviewed the Tenth District Court of Appeals's conclusion that a prior decision of the Supreme Court of Ohio "did not collaterally estop appellees' claims that they were public employees when they worked for [the Franklin County Public Defender's Office ("FCPDO")]" because, in the prior case, the court "did not actually litigate and determine" FCPDO's status as a public employer after it was incorporated as a nonprofit organization in 1984.  120 Ohio St.3d 386, 2008-Ohio-6254, at ¶ 29.  The court observed that, "[i]n effect, the claimants' failure to raise or contest the issue [of FCPDO's postincorporation status] in [the prior case] * * * was tantamount to a stipulation in those cases that FCPDO was a private employer after its incorporation in 1984," and it quoted the Restatement's position that an issue is not actually litigated "'if it is the subject of a stipulation between the parties.'"  *Id.* at ¶ 35, quoting 1 Restatement of the Law 2d, Judgments, Section 27, Comment e (1982).  The court also cited to one of its previous cases, in which it suggested that matters established by stipulation in earlier actions are not subject to issue preclusion.  *Id.*, citing *Consolo v. Cleveland*, 103

-29-

Ohio St.3d 362, 2004-Ohio-5389, ¶ 9 (holding that a stipulation in a prior action that a union was a collective-bargaining representative did not collaterally estop a group of appellees from asserting that the union is not their exclusive bargaining representative). Ultimately, the court concluded that the claimants in *Davis* were not barred from litigating FCPDO's postincorporation status because that issue had not been "actually decided" in earlier cases. *Id.* at ¶ 36. However, the court stopped short of stating plainly that issue preclusion did not apply because issues established by stipulation are not "actually litigated." *See id.*

{¶42} While the court in *Davis* did not hold, in so many words, that matters stipulated to in previous actions are not "actually litigated" for purposes of issue preclusion, the court's opinion can be fairly construed as supporting this proposition. And though the court in *Davis* did not consider whether matters admitted under Civ.R. 36 are "actually litigated" or even reference Civ.R. 36, we think that this proposition is equally valid with respect to admissions made under Civ.R. 36. First, Civ.R. 36 admissions function very similarly to stipulations. *See In re Cassidy*, 892 F.2d 637, 640 (7th Cir.1990), fn. 1 (analogizing deemed admissions to stipulations). Indeed, the Staff Notes to Civ.R. 36 provide that "Rule 36 admissions are not evidentiary admissions such as admissions against interest, but are more in the nature of stipulations." 1970 Staff Note, Civ.R. 36. Moreover, the section of the Restatement that the court quoted with apparent approval in *Davis*

also provides that an issue is not actually litigated "if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial * * *." 1 Restatement, Section 27, Comment e.

{¶43} Furthermore, at least one court has relied on *Davis*, along with federal authority, to conclude that, under Ohio law, matters deemed admitted under Civ.R. 36 in a prior action are not subject to issue preclusion in a subsequent action. *In re Somogye*, Bankr.N.D.Ohio No. 18-30927, 2018 WL 5810447 (Nov. 5, 2018). The question in *Somogye* was the same as in the instant case: "whether a judgment based on admissions under [Civ.R. 36], as opposed to the admissions themselves, can be used in a later proceeding to preclude litigation of the factual issues admitted." *Id.* at *5. The court noted that in the federal cases it reviewed, the courts "uniformly held that a judgment based on admissions under [Fed.R.Civ.P. 36] (or its counterpart under federal Tax Court Rule 90(f)) does not have issue preclusive effect in a later proceeding." *Id.* at *5-6 (collecting cases). The court then proceeded to examine *Davis*, concluding:

> While the Ohio Supreme Court has not addressed the issue preclusive
> effect of a judgment based on deemed admissions under [Civ.R. 36],
> to the extent that such admissions can be considered a type of
> stipulation * * *, *Davis* lends strong support for concluding that the
> Ohio Supreme Court would find that factual findings in a prior

judgment based upon deemed admissions were not "actually litigated."

*Id.* at *7. Finally, the court expressed its belief that the Supreme Court of Ohio would reach the same result by "simply giving effect to the stated limitation in [Civ.R. 36]" that deemed admissions are conclusive only for purposes of the action in which they are made. *Id.*

{¶44} Accordingly, based on the weight of authority, we conclude that issue preclusion does not bar U.S. Bank from relitigating the matters that were deemed admitted in the first foreclosure and served as the basis of the trial court's July 5, 2016 judgment dismissing the first foreclosure. As a result, to the extent that the Watsons based their motions for summary judgment on the issue-preclusive effect of the matters deemed admitted in the first foreclosure, the trial court did not err by denying their motions. Further, as explained above, neither claim preclusion nor issue preclusion otherwise bars U.S. Bank from bringing the second foreclosure. Accordingly, we conclude that the trial court did not err by denying the Watsons' first motion for summary judgment or by denying their second motion for summary judgment insofar as their second motion for summary judgment is based on the applicability of claim preclusion and issue preclusion.

{¶45} Next, we consider the Watsons' second assignment of error, in which they argue that the trial court erred by granting U.S. Bank's motion for summary

judgment and denying their second motion for summary judgment. In their second assignment of error, the Watsons propose that the trial court erred by denying their second motion for summary judgment for the exact same reason that it erred by granting U.S. Bank's motion for summary judgment. They argue that the trial court should have granted their second motion for summary judgment and denied U.S. Bank's motion for summary judgment because U.S. Bank did not and cannot produce admissible evidence to prove its claim.

{¶46} In support of its motion for summary judgment, U.S. Bank submitted the affidavit of Melinda Patterson ("Patterson"), an officer of U.S. Bank's loan servicer, Caliber Home Loans, Inc. ("Caliber"). (Doc. No. 31). The following documents are attached to Patterson's affidavit: a photocopy of a promissory note signed and initialed by a Pamela J. Watson, as well as an allonge to the note which is indorsed in blank; a photocopy of a mortgage signed and initialed by a Pamela J. Watson; a photocopy of a corporate assignment of mortgage indicating that the mortgage was assigned by MERS, as nominee for Accredited, to HSBC; a photocopy of a limited power of attorney authorizing Caliber to take all reasonable steps to complete the assignment of mortgages from a number of sellers, including HSBC, to LSF9 Mortgage Holdings, LLC; a photocopy of an assignment of mortgage and note purporting to assign the mortgage and note from HSBC to U.S. Bank as trustee for LSF9 Master Participation Trust; a copy of a computer

spreadsheet purporting to depict the history of payments on the note and showing an outstanding principal balance of $74,111.16 as of March 1, 2011; and a communication dated October 14, 2011, which is titled "Notice of Right to Cure Default." (Doc. No. 31, Exs. A-1, A-3, A-4, A-5, A-6, A-7, A-8). In her affidavit, Patterson avers that U.S. Bank "had possession of the original blank indorsed Note at the time the Complaint was filed * * * and continues to have possession of the original Note." (Doc. No. 31). She also asserts that U.S. Bank "is the current assignee of the Mortgage and was the assignee of the Mortgage at the time of the filing of the Complaint," that Pamela defaulted on the note, that Pamela's default has not been cured, that all conditions precedent have been complied with, and that $74,111.16, plus interest, is owing as of March 1, 2011. (*Id.*).

{¶47} The Watsons argue that the averments in Patterson's affidavit and the documents attached to the affidavit are not competent summary judgment evidence. Specifically, the Watsons note that Patterson's affidavit "was made solely as an officer of [Caliber]." (Appellants' Brief at 7). They argue that Patterson is not an officer or employee "of [HSBC] that can authenticate the documents submitted by U.S. Bank * * * as required by Civ.R. 56 and Evid.R. 801, 802, and 803(6)." (*Id.*). The Watsons conclude that Patterson's affidavit was "not [made] on personal knowledge, or as [a] custodian[] of business records of [Accredited], or [HSBC] and do[es] not provide any admissibility or evidentiary support" for most of the exhibits

attached thereto. (*Id.* at 9). Thus, they contend that the documents attached to Patterson's affidavit are not admissible under the business-records exception to the hearsay rule. *See* Evid.R. 803(6).

{¶48} The Watsons' argument is without merit. This court has previously considered and rejected arguments like the one raised by the Watsons. *See Secy. of Veterans Affairs v. Leonhardt*, 3d Dist. Crawford No. 3-14-04, 2015-Ohio-931, ¶ 40-60. Other courts have also rejected similar arguments. As explained by the Second District Court of Appeals, in mortgage-foreclosure cases,

> "a court may admit a document as a business record [under Evid.R. 803(6)] even when the proffering party is not the maker of the document, if the other requirements of Evid.R. 803(6) are met and the circumstances suggest that the record is trustworthy." *U.S. Bank, N.A. v. Christmas*, 2d Dist. Montgomery No. 26695, 2016-Ohio-236, ¶ 18, *vacated on other grounds*, 146 Ohio St.3d 1468, 2016-Ohio-5108, 54 N.E.3d 1267, citing *Great Seneca Financial v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 14 (1st Dist.); *Secy. of Veterans Affairs v. Leonhardt*, 2015-Ohio-931, 29 N.E.3d 1, ¶ 57 (3d Dist.); *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 24 (10th Dist.). "Trustworthiness of a record is suggested by the profferer's

incorporation into its own records and reliance on it." *Christmas*, 2016-Ohio-236, ¶ 18, citing *Leonhardt* at ¶ 58. "Because 'if information is sufficiently trustworthy that a business is willing to rely on it in making business decisions, the courts should be willing to rely on that information as well.'" *Id.*, quoting *Quill v. Albert M. Higley Co.*, 2014-Ohio-5821, 26 N.E.3d 1187, ¶ 44 (5th Dist.) (referring to this as the rationale behind the business-records exception), citing 1980 Staff Note, Evid.R. 803(6).

*Ocwen Loan Servicing, LLC v. Malish*, 2d Dist. Montgomery No. 27532, 2018-Ohio-1056, ¶ 23. In *Leonhardt*, we explained why business records maintained by mortgage servicers, consisting in part of documents originally generated and maintained by other entities, are particularly trustworthy:

Because of the nature of the mortgage industry, many mortgage lenders rely on mortgage servicers to handle the daily functions of mortgages. Similarly, the mortgage servicer may change throughout the life of the loan. Considering the business relationship between the mortgage lender and the mortgage servicer, as well as amongst successor mortgage servicers, these entities rely on the underlying loan records for accuracy in conducting ordinary business functions—that is, the mortgage servicers are under a business duty to the

mortgage lender to be accurate and successor mortgage servicers rely

on the records of prior mortgage servicers for accuracy in servicing

the loan.

*Id.* at ¶ 59.

**{¶49}** In her affidavit, Patterson states that she is authorized to execute the affidavit on behalf of U.S. Bank in her capacity as an "authorized officer" of Caliber and that "[i]n the regular performance of [her] job functions, [she has] personal knowledge obtained through a review of the business records maintained by Caliber for the purpose of servicing mortgage loans." (Doc. No. 31). She states that her job responsibilities include "reviewing the internal record-keeping systems of Caliber," "reviewing the loan document," and "ensuring completeness and accuracy of the loan documents and loan histories." (*Id.*). Patterson's affidavit also states that Caliber's business records are made "at or near the time of the occurrence of the matters," "recorded by persons with knowledge of the information in the business record, or from information transmitted by persons with knowledge," "kept in the course of Caliber's regularly conducted business activities," and "created by Caliber as a regular practice." (*Id.*). *See* Evid.R. 803(6). The affidavit further provides that "Caliber's records incorporate the records of their predecessors in interest, and the prior servicers of this mortgage loan, * * * which are maintained and relied upon [in] the regular course of business by Caliber." (Doc. No. 31). Finally, the affidavit

provides that it was made "from a review of those business records and from [Patterson's] knowledge of how said records are created and maintained," that the documents attached to the affidavit were copied from the business records Patterson reviewed prior to making the affidavit, and that the documents attached to the affidavit are true and accurate copies of the original business records. (*Id.*).

{¶50} Based on the averments in her affidavit, Patterson is a person qualified to authenticate Caliber's business records pursuant to Evid.R. 803(6) because the statements in her affidavit show that she "is sufficiently familiar with [Caliber's] business operations and the preparation, maintenance, and retrieval of [Pamela's] loan documents" to reasonably attest that "the records are what they purport to be and that they were made in the ordinary course of business." *Leonhardt* at ¶ 51, citing *Pyles v. Midwest Neurosurgeons*, 3d Dist. Allen No. 1-98-41, 1999 WL 152886, *5 (Feb. 18, 1999) and *Anders* at ¶ 15. *See Secy. of Veterans Affairs v. Anderson*, 8th Dist. Cuyahoga No. 99957, 2014-Ohio-3493, ¶ 25 ("Employees of servicing agents are competent to testify in foreclosure actions regarding loans they service."). Furthermore, Patterson's affidavit establishes that Caliber's business records satisfy the requirements of Evid.R. 803(6) and that the documents attached to the affidavit, which Patterson reviewed before making the affidavit, are part of Caliber's business records.

**{¶51}** Moreover, Patterson's statement that Caliber's records incorporate the records of its predecessors and that Caliber maintains and relies on its predecessors records in the regular course of business indicates that Caliber deems its predecessors' records to be trustworthy, and we have found no reason to doubt the trustworthiness of the source of the information in Caliber's records or the circumstances of their preparation. *See Malish*, 2018-Ohio-1056, at ¶ 25. Therefore, the documents attached to Patterson's affidavit are properly authenticated and admissible under Evid.R. 803(6), and the averments in Patterson's affidavit, made after she reviewed Caliber's business records, are properly based on Patterson's personal knowledge of the facts contained in Caliber's authenticated business records. *See id.*; *U.S. Bank, N.A. v. Stocks*, 2d Dist. Montgomery No. 27400, 2017-Ohio-8108, ¶ 61 ("'That an affiant relies on business records for her facts does not mean that the facts are not based on personal knowledge.'"), quoting *Bibbs v. Cinergy Corp.*, 1st Dist. Hamilton No. C-010390, 2002 WL 537628, *2 (Apr. 12, 2002); *PNC Mtge. v. Krynicki*, 7th Dist. Mahoning No. 15 MA 0194, 2017-Ohio-808, ¶ 9-11, 13-15. Accordingly, we reject the Watsons' argument that U.S. Bank fails to support its motion for summary judgment with competent evidence. As we have rejected the Watsons' challenge to the admissibility of U.S. Bank's summary judgment evidence, we conclude that the trial court did not err by

denying the Watsons' second motion for summary judgment or by refusing to deny U.S. Bank's motion for summary judgment for lack of competent evidence.

**{¶52}** Nonetheless, while we have concluded that U.S. Bank supports its motion for summary judgment with competent evidence, U.S. Bank must still show that there are no genuine issues of material fact with respect to the essential elements of its claim and that it is entitled to judgment as a matter of law. When moving for summary judgment in a foreclosure action, the plaintiff must present evidentiary-quality materials demonstrating:

"(1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due."

*Bank of New York Mellon v. Bridge*, 9th Dist. Summit No. 28461, 2017-Ohio-7686, ¶ 10, quoting *Bank of Am., N.A. v. Edwards*, 9th Dist. Lorain Nos. 15CA010848 and 15CA010851, 2017-Ohio-4343, ¶ 10. We conclude that U.S. Bank has carried its initial burden of demonstrating the absence of genuine issues of material fact with respect to each of these five elements.

**{¶53}** First, Patterson's statement that U.S. Bank was in possession of the note allegedly signed by Pamela when it filed the second foreclosure, her statement

that U.S. Bank is still in possession of the note, and the photocopies of the note and the allonge containing a blank indorsement demonstrate that U.S. Bank had standing to file the second foreclosure and is the holder of the note. "When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." R.C. 1303.25(B). A "holder" includes a person who is in possession of an instrument payable to bearer. R.C. 1301.201(B)(21)(a); *Watson I*, 2015-Ohio-221, at ¶ 25, quoting *BAC Home Loans Servicing, L.P. v. Haas*, 3d Dist. Marion No. 9-13-40, 2014-Ohio-438, ¶ 27. Therefore, by offering evidence that it was in possession of the note, which is indorsed in blank, at the time it filed the second foreclosure and that it remains in possession of the note, U.S. Bank has presented evidence sufficient to establish that it had standing to bring the second foreclosure and that it is the holder of the note.

{¶54} In addition, the photocopies of the mortgage and note allegedly executed by Pamela, the various assignments, and the power of attorney document, along with Patterson's averments that U.S. Bank was the assignee of the mortgage when it filed the second foreclosure and that it is the current assignee, are sufficient to bolster U.S. Bank's standing to bring the second foreclosure, to establish its status as holder of the mortgage, and to demonstrate the chain of assignments and transfers culminating in its acquisition of the mortgage and note. Nonetheless, the Watsons contend that U.S. Bank's evidence fails to establish a complete, valid chain of

transfers. They argue that U.S. Bank's documents do "not contain [a] listing of the mortgage loans referred to in the limited power of attorney" and that its documents "certainly do[] not establish that a mortgage loan of [Pamela] was included in such power of attorney." (Appellants' Brief at 8). The Watsons attempt to portray their argument as a challenge to U.S. Bank's assertion that it is actually the assignee of the mortgage. (*See id.* at 9) (citing two cases allegedly dealing with the "issue of missing documents which would show the specific mortgage loan was transferred" and the "lack of chain of title by failure to provide documents of a specific obligation being transferred or assigned").

{¶55} Regardless of the way that the Watsons style their argument, by disputing that the mortgage allegedly signed by Pamela was one of the mortgages that Caliber was authorized to assign, but failing to account for the copy of the recorded assignment between HSBC and U.S. Bank, it is clear that the Watsons are challenging whether the mortgage was *validly* assigned to U.S. Bank rather than challenging whether it was *actually* assigned. Yet, under the facts of this case, the Watsons lack standing to challenge the validity of the assignment from HSBC to U.S. Bank. *Christiana Trust v. Berter*, 12th Dist. Butler No. CA2019-07-109, 2020-Ohio-727, ¶ 33, quoting *MidFirst Bank v. Wallace*, 12th Dist. Warren No. CA2013-07-053, 2014-Ohio-4525, ¶ 14 ("'[W]hen a debtor or mortgagor is neither a party to, nor a third-party beneficiary of, the assignment of a mortgage, the debtor or

mortgagor lacks standing to challenge the validity of the mortgage assignment between an assignor and an assignee.'''); *Chase Home Fin., L.L.C. v. Heft*, 3d Dist. Logan Nos. 8-10-14 and 8-11-16, 2012-Ohio-876, ¶ 37. Because the Watsons do not otherwise contest that the mortgage was actually assigned to U.S. Bank, their arguments do not alter our conclusion that U.S. Bank has further shown that it had standing to bring the second foreclosure, established its status as holder of the mortgage, and demonstrated the chain of assignments.

{¶56} Furthermore, by providing Patterson's sworn statement that the note is in default, her recitation of the amount of principal and interest due, a copy of the computer spreadsheet documenting the payment history on the note, and a copy of the default notice letter, U.S. Bank has shown that the note is in default and evidenced the amount of principal and interest due. Generally, "an affidavit establishing a loan is in default is sufficient to demonstrate entitlement to summary judgment where there is no evidence controverting the affiant's averments." *Fifth Third Mtge. Co. v. Fantine*, 5th Dist. Fairfield No. 15-CA-5, 2015-Ohio-4260, ¶ 21, citing *Cent. Mtge. Co. v. Elia*, 9th Dist. Summit No. 25505, 2011-Ohio-3188, ¶ 7. Moreover, courts have held that "'an averment of outstanding indebtedness made in the affidavit of a[n] * * * officer with personal knowledge of the debtor's account is sufficient to establish the amount due and owing on the note, unless the debtor refutes the averred indebtedness with evidence that a different amount is owed.'"

*Id.* at ¶ 27, quoting *JPMorgan Chase Bank, N.A. v. Salazar*, 6th Dist. Lucas No. L-13-1038, 2014-Ohio-1002, ¶ 13 and citing *Natl. City Bank v. TAB Holdings, Ltd.*, 6th Dist. Erie No. E-10-060, 2011-Ohio-3715, ¶ 12. In addition, because copies of the documents that Patterson relied on to inform her averments were attached to her affidavit, her averments concerning default and the principal and interest due can be properly considered in determining whether U.S. Bank demonstrated that the note is in default and established the amount of principal and interest due. *See HSBC Bank USA, Natl. Assn. v. Webb*, 10th Dist. Franklin No. 16AP-845, 2017-Ohio-9285, ¶ 15-17. Thus, U.S. Bank's evidence is sufficient to meet its initial burden of showing that the note is in default and of demonstrating the amount of principal and interest due.

{¶57} Finally, we are satisfied that there is no genuine issue of material fact with respect to whether all conditions precedent have been met. U.S. Bank contends that Patterson's averments and the "Notice of Right to Cure Default" letter, which, under the terms of the mortgage, was required to be sent prior to accelerating the loan and filing for foreclosure, are sufficient to demonstrate that all conditions precedent have been met. However, even assuming that this evidence does not show that all conditions precedent have been satisfied, based on our review of the parties' pleadings, we find it to be beyond argument that all conditions precedent have been met.

{¶58} In paragraph one of its complaint, U.S. Bank averred generally that it has "complied with all conditions precedent as set forth in the note and mortgage." (Doc. No. 1). U.S. Bank's pleading is permissible under Civ.R. 9(C), which provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." In contrast, the denial of the performance or occurrence of conditions precedent "shall be made specifically and with particularity." Civ.R. 9(C). The performance of conditions precedent is deemed admitted "when [a] party fail[s] to deny that the conditions precedent had been satisfied with the specificity required by Civ.R. 9(C)." *Bank of Am., N.A. v. Calloway*, 8th Dist. Cuyahoga No. 103622, 2016-Ohio-7959, ¶ 19, citing *Bank of Am., N.A. v. Michko*, 8th Dist. Cuyahoga No. 101513, 2015-Ohio-3137, ¶ 20-21; *U.S. Bank Natl. Assn. v. Stanze*, 2d Dist. Montgomery No. 25554, 2013-Ohio-2474, ¶ 13-14, quoting *Lewis v. Wal-Mart, Inc.*, 10th Dist. Franklin No. 93AP-121, 1993 WL 310411, *3 (Aug. 12, 1993). Here, in their answer, the Watsons generally denied paragraphs one through four of U.S. Bank's complaint. (Doc. No. 7). Therefore, because the Watsons failed to deny the performance of conditions precedent specifically and with particularity as required by Civ.R. 9(C), the performance of all conditions precedent is deemed admitted for purposes of this action.

**{¶59}** Aside from their challenge to the validity of the assignment of the mortgage and note from HSBC to U.S. Bank, which we addressed above, the Watsons do not seriously dispute any of the material facts of this case or offer any evidence contradicting U.S. Bank's evidence. The Watsons present no evidence suggesting that Pamela did not sign the note and mortgage attached to U.S. Bank's motion for summary judgment. The Watsons present no evidence suggesting that U.S. Bank is not the holder of the note or that the mortgage was not in fact assigned to U.S. Bank. The Watsons present no evidence suggesting that Pamela is not in default of her obligations under the note. The Watsons do not assert that a different amount of principal and interest is due, and while their noncompliance with Civ.R. 9(C) would likely frustrate any effort to prove that there are conditions precedent that have not been met, they do not argue that there are conditions precedent that have not been performed. The Watsons have simply failed to rebut with specific facts showing that there are any genuine issues for trial.

**{¶60}** For these reasons, we conclude that there are no genuine issues of material fact with respect to any of the elements of U.S. Bank's claim and that U.S. Bank is entitled to judgment as a matter of law. Accordingly, we conclude that the trial court did not err by granting U.S. Bank's motion for summary judgment.

**{¶61}** The Watsons' first and second assignments of error are overruled.

**Assignment of Error No. III**

**The trial court erred in failing to consider and to award sanctions pursuant to R.C. 2323.51.**

{¶62} In their third assignment of error, the Watsons argue that the trial court erred by failing to grant either of their motions for sanctions. Specifically, the Watsons argue that U.S. Bank engaged in frivolous conduct because existing law did not support its decision to file the second foreclosure and it did not have a good faith argument for changing existing law. (Appellants' Brief at 9-11). Concerning the "existing law," the Watsons claim that "it must have been crystal clear to U.S. Bank and its counsel after its motion to reconsider the res judicata portion of [*Watson II*] was denied * * * that res judicata barred the complaint in this case * * *." (*Id.* at 10). Thus, they contend, "[a]ll the conduct of U.S. Bank and its counsel in refusing to dismiss the second complaint and in resisting the summary dismissal of such complaint was not only frivolous, but knowingly frivolous." (*Id.*). Moreover, the Watsons argue that "U.S. Bank and its counsel acted frivolously in multiple areas when its * * * complaint [in the second foreclosure] failed to allege that * * * Pamela * * * signed or otherwise made the note and mortgage or that she was in default of said note and mortgage." (*Id.*). Finally, the Watsons argue generally that U.S. Bank acted frivolously because it did not support its motion for summary judgment with competent evidence or provide evidence going to all the elements of its claim. (*Id.* at 10-11).

{¶63} R.C. 2323.51 is one of two mechanisms provided by Ohio law "for an aggrieved party to recover attorney fees, court costs, and other reasonable expenses arising out of frivolous conduct * * *." *Reddy v. Singh*, 3d Dist. Marion No. 9-14-29, 2015-Ohio-1180, ¶ 69, citing *ABN AMRO Mtge. Group, Inc. v. Evans*, 8th Dist. Cuyahoga No. 98777, 2013-Ohio-1557, ¶ 15, citing *Sigmon v. S.W. Gen. Health Ctr.*, 8th Dist. Cuyahoga No. 88276, 2007-Ohio-2117, ¶ 14. Under R.C. 2323.51, "at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." R.C. 2323.51(B)(1). R.C. 2323.51(A)(2), which defines frivolous conduct, provides in pertinent part:

(2) "Frivolous conduct" means * * *:

(a) Conduct of an inmate or other party to a civil action, of an inmate who has filed an appeal of the type described in [R.C. 2323.51(A)(1)(b)], or of the inmate's or other party's counsel of record that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper

purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii)   It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii)  The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv)  The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).   "Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective, standard * * * and must involve egregious conduct." *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶ 15, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 21. "In determining whether a claim itself is frivolous under the statute, the test is whether no reasonable lawyer would have brought the

action in light of the existing law." *Reddy* at ¶ 71, citing *Orbit Electronics, Inc. v. Helm Instrument Co., Inc.*, 167 Ohio App.3d 301, 2006-Ohio-2317, ¶ 49 (8th Dist.).

**{¶64}** "'"[N]o single standard of review applies in R.C. 2323.51 cases."'" *Id.* at ¶ 67, quoting *Namenyi v. Tomasello*, 2d Dist. Greene No. 2013-CA-75, 2014-Ohio-4509, ¶ 19, quoting *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51 (10th Dist.1996). "When the question regarding what constitutes frivolous conduct calls for a legal determination, such as whether a claim is warranted under existing law, an appellate court is to review the frivolous conduct determination de novo, without deference to the trial court's decision." *Id.*, citing *Natl. Check Bur. v. Patel*, 2d Dist. Montgomery No. 21051, 2005-Ohio-6679, ¶ 10. "'In contrast, if there is no disputed issue of law and the question is factual, we apply an abuse of discretion standard of review.'" *Id.*, quoting *Riverview Health Inst., L.L.C. v. Kral*, 8th Dist. Cuyahoga No. 24931, 2012-Ohio-3502, ¶ 33, citing *Natl. Check Bur.* at ¶ 11. Likewise, the ultimate decision whether to award sanctions under R.C. 2323.51 will not be reversed absent a showing of an abuse of discretion. *DiFranco* at ¶ 13, quoting *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, ¶ 10, citing *Striker* at ¶ 11. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶65}** In its February 9, 2018 judgment denying the Watsons' first motion for sanctions, the trial court found that U.S. Bank "was justified in the filing of the new, albeit nearly identical, complaint in which the previous admissions deemed admitted were not an issue." (Doc. No. 23). Consequently, the trial court concluded that U.S. Bank "committed no frivolous conduct" and denied the Watsons' first motion for sanctions. (*Id.*). Although the trial court did not make any findings of fact with respect to its denial of the Watsons' second motion for sanctions, the Watsons' second motion for sanctions was based on the same res judicata argument as its first motion for sanctions as well as arguments relating to supposed defects in U.S. Bank's summary-judgment evidence. (Doc. Nos. 46, 49, 50).

**{¶66}** In light of our resolution of the Watsons' first and second assignments of error, we conclude that the trial court did not err by holding that U.S. Bank did not engage in frivolous conduct. As explained in our discussion of the Watsons' first assignment of error, U.S. Bank is not barred either by claim preclusion or by issue preclusion from maintaining the second foreclosure or from litigating issues critical to succeeding on its claim. Therefore, we cannot conclude that U.S. Bank's claim is frivolous because existing law supports that the claim could be brought and litigated by a reasonable lawyer. Furthermore, in our examination of the Watsons' second assignment of error, we concluded that U.S. Bank supported its motion for summary judgment with evidentiary-quality materials, that U.S. Bank demonstrated

the absence of any genuine issues of material fact concerning the elements of its claim, that the Watsons failed to rebut U.S. Bank's showing, and that U.S. Bank is entitled to judgment as a matter of law. Thus, because we have already necessarily rejected the Watsons' arguments relating to the quality and sufficiency of U.S. Bank's allegations and evidence, we cannot now hold that U.S. Bank conducted this litigation in a frivolous manner. In sum, as we agree with the trial court that U.S. Bank did not engage in frivolous conduct, we conclude that the trial court did not abuse its discretion by denying the Watsons' motions for sanctions under R.C. 2323.51.

{¶67} The Watsons' third assignment of error is overruled.

{¶68} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**